# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Basim Sabri, Marty Schulenberg, Mohamed
Cali, Jay Webb, and Zachary Metoyer,

        Plaintiffs,

vs.

Whittier Alliance, a Minnesota not-for-profit
corporation, and City of Minneapolis,
a municipal corporation,

        Defendants.

---

Court File No. _____

**AFFIDAVIT OF
ZACHARY METOYER**

STATE OF MINNESOTA   )
                               ) ss.
COUNTY OF HENNEPIN   )

Zachary Metoyer, being first duly sworn on oath, hereby deposes and says the following:

1. I am one of the Plaintiffs in the above-entitled matter.

2. I am ethnically Creole – meaning a mixture of Caucasian, African-American, Native-American, and Asian.

3. I have long been active in many organizations, including the Whittier Alliance, having once been elected to its Board of Directors.

4. Once elected, however, I was removed by the remainder of the Board.

5. During my activity with the Whittier Alliance, I have noted several policies which were clearly designed for no other purpose than to preserve the nearly all-white composition of the Board and to prevent anyone from successfully challenging incumbent Board members.

1

6. For example, in 2013, the administration of the Board, particularly Marian Biehn, Executive Director, adopted and implemented membership criteria clearly in violation of the Whittier Alliance by-laws, and designed to exclude racial and ethnic minorities from membership.

7. Article III, Section 1, of the Whittier Alliance by-laws, a copy of which is attached hereto as Exhibit A, establishes the following criteria for membership:

> **General Membership** of this Corporation is open to everyone who:
> A. Is eighteen (18) years or older, and
> B. Resides, owns property, or owns or represents a for-profit or non-profit business (1 representative per business) in the Whittier Neighborhood, and
> C. Supports the aims and purpose of the Corporation as per Article II, and
> D. Agrees to abide by its articles of incorporation and by-laws.

8. Article III, Section 2, of the Whittier Alliance by-laws, describes the means by which one can activate his or her membership in the organization. That section provides:

> Members of the Corporation are admitted to the organization by express or implied consent by:
> A. Signing in at any meeting of the Membership, or
> B. Calling the neighborhood organization to request information, or
> C. Making a contribution to the organization, or
> D. Receiving mail from the Corporation.

9. Section 3 of the same article provides the means by which one may prove his or her membership, in order to vote for the Board of Directors at an annual meeting. Of particular interest is subparagraph C, relating to business owners. The provision provides as follows:

> Each Whittier for-profit or non-profit business has one (1) vote. The business or appointed representatives of the business must provide proof that the business is located in Whittier by providing a copy of the business location in Whittier, by presenting a copy of the business license, a copy of a current utility bill as above, a listing in the current Minneapolis phone book or a listing in the current Whittier Business Directory.

10. There are approximately 241 Somali-owned businesses, located in the Karmel Square and Karmel Plaza, and some 500 total within Whittier. Every single one of these Somali-

owned businesses has the right, under the plain language of the by-laws, to register and vote for the Whittier Alliance Board of Directors.

11. For most of these businesses, no business license is required.

12. The landlord in the Karmel Mall pays all utilities, meaning that none of the Somali-owned businesses could present current utility bills.

13. Virtually all of the Somali-owned businesses, however, had written leases, clearly demonstrating that they owned and operated businesses within the Whittier neighborhood.

14. Notwithstanding the plain language of Article III, Section 3.C., stating that membership could be established "by presenting a copy of the business location in Whittier," the Executive Director of the Whittier Alliance consistently refused to accept these business leases as proof of location within Whittier.

15. An alternative method of proving membership within Whittier was a listing "in the current Whittier Business Directory."

16. Numerous Somali-owned businesses applied to be listed in the Whittier Business Directory.

17. The Whittier Alliance Executive Director took the position that none of them could be listed in their directory, without the same proof as was otherwise required to be voting members. As a result, a business lease clearly indicating operation of a business within Whittier was deemed to be insufficient to allow Somali-owned businesses to be listed in the Whittier Business Directory.

18. The only basis for such strained and unsupported interpretation of the by-laws was to deliberately exclude Somali-owned businesses from voting rights, in order to preserve the nearly all-white membership in the Board of Directors.

19. Plaintiffs in this case were vocal opponents of such racially discriminatory policies.

20. The actions of the Whittier Alliance, and, in particular, its Executive Director, were plainly indicative of the racial bias of the organization.

21. When Sabri Properties, owned by Plaintiff Basim Sabri, attempted to gain Whittier's approval for a condominium/apartment project at 2848 Pillsbury Avenue South, wherein the overwhelming majority of residents were to be Somali immigrants, Marian Biehn, Executive Director of the Whittier Alliance, publicly opposed the project, asserting that it would "ghettoize the neighborhood."

22. All of the Plaintiffs in this lawsuit sought to run for the Board of Directors in the election held on March 27, 2014.

23. Most of the Plaintiffs were ethnic minorities, and all of the Plaintiffs were vocal opponents of the racially discriminatory policies of the Board of Directors of Whittier Alliance.

24. All of the Plaintiffs were clearly eligible to run for the Board of Directors under the only qualifications set forth in the by-laws, in Article V, Section 2, which provides, "Each director on the Board of Directors shall be a member of this Corporation, per Article III, Section 1." All of the Plaintiffs met this single criterion.

25. However, all of the Plaintiffs, other than I, received an e-mail from Marian Biehn, Executive Director of Defendant Whittier Alliance, a copy of which is attached hereto as Exhibit B, refusing to permit Plaintiffs to run. The e-mail stated:

> Thank you for submitting your application for Whittier Alliance Board Candidacy. The Board met and reviewed all applications and determined that you do not meet all of the eligibility criteria at this time.
>
> The job description you received for a position on the Board indicates that Board members are legally responsible for all activities of the organization, which is true for all Minnesota non-profit corporations such as Whittier Alliance. The job description sets out specific categories of responsibility, including human

4

resources, planning, finance, community relations, and organizational operations. The application for the Board position requested information about your experience working with Whittier Alliance, your skills and your interest in being a Board member. Because of the legal and financial responsibilities required of a member of the Board of Directors, the Board of Directors has determined that the Board Candidate eligibility rests not only on an applicant's residence or ownership of business property in the Whittier neighborhood, but also on an applicant's documented history of engagement with the organization and support for the aims and purposes of the Whittier Alliance (a criteria (*sic*) specified in Article III, Section 1, of the bylaws). Your application did not indicate that you have participated in Whittier activities in the past and, for that reason, your application was not approved at this time.

26. This e-mail was particularly egregious for at least the following reasons:

a. No criteria other than membership of the organization, is set forth in the by-laws to determine eligibility to run for the Board.
b. By the Board being able to invent new criteria, in addition to the eligibility criteria set forth in the by-laws, the incumbent Board was in fact given the ability to screen out all of its potential opponents.
c. All of the Plaintiffs who were disqualified from running for membership were either racial or ethnic minorities, or supportive of such minorities.
d. All of the disqualified candidates were vocal opponents of the racially discriminatory and exclusionary policies being pursued by the incumbent Board.

27. As a result, Plaintiffs filed an administrative grievance with the Whittier Alliance, a copy of which is attached hereto as Exhibit C.

28. On September 29, 2014, the Whittier Alliance Board of Directors, voted to reject the grievance in its entirety, offering no public reasons for its decision. *See* the minutes of the meeting attached hereto as Exhibit D.

29. Plaintiffs appealed the Whittier Alliance decision to Defendant City of Minneapolis, pursuant to the grievance procedure set forth in the City's Citizen Participation Guidelines, a copy of which is attached to Plaintiffs' Complaint as Exhibit A.

30. Following the rejection by the Whittier Board of Directors, Plaintiffs brought their grievance directly to the Neighborhood and Community Relations Department of the City of Minneapolis. A copy of the letter advancing such grievance is attached hereto as Exhibit E.

31. On December 18, 2014, the Neighborhood and Community Relations Office of Defendant City of Minneapolis rejected Plaintiffs' grievance in a letter attached hereto as Exhibit F and based upon a memorandum attached hereto as Exhibit G.

32. Among the bases for Plaintiffs' grievance with the City was the fact that the disqualification criteria used by Defendants violated the First and Fourteenth Amendments to the United States Constitution.

33. In its rejection of Plaintiffs' grievance, the City specifically found that its grievance procedure lacked jurisdiction to address Plaintiffs' constitutional claims.

34. It is for this reason that Plaintiffs believe they have no choice but to bring their constitutional claim to this Court in this action.

35. In the letter rejecting Plaintiffs' grievance, David Rubedor, Director of Defendant City of Minneapolis' Neighborhood and Community Relations Office, wrote:

> The findings recommend that the Neighborhood and Community Relations staff require Whittier Alliance to revise its by-laws to be more explicit on its election process and the qualifications for Board candidacy; and to develop clear election procedures that guide its process and are included with other election materials. The Neighborhood Support Specialist assigned to Whittier has been working with the Whittier Alliance to update their by-laws and will continue to assist with these items to assure that they are implemented well in advance of the next annual meeting.

36. In accordance with this paragraph, Defendant Whittier Alliance, apparently with the direct assistance of Defendant City of Minneapolis, amended its by-laws, effective January 12, 2015. A copy of said amended by-laws is attached hereto as Exhibit H.

37. The following additional qualifications were added in Article V, Section 2, of the by-laws:

> Each at-large director on the Board of Directors must:
> A. be an eligible voting member for at least six months prior to the date of an application or appointment.
> B. be able to demonstrate current and ongoing participation with the Whittier Alliance.
> C. be able to demonstrate attendance at Whittier Alliance sponsored meetings or task forces within the current year.
> D. support the aims and purposes of the Corporation as per Article II.
> E. agree to abide by its Articles of Incorporation and by-laws.
> F. not have committed an act of malice or defamation against the Whittier Alliance or any member of the Board of Directors or otherwise disrupt the aims and purposes of the Corporation.

38. If the procedure implementing these rules are administered in the same manner as were the old rules, the incumbent Executive Director and incumbent Board of Directors will be the sole judge of qualifications under these revised by-laws. This means:

> The incumbent Board of Directors will be the sole judge of whether a candidate has demonstrated "current and ongoing participation within the Whittier Alliance," and, more significantly, whether the candidate has "committed an act of malice or defamation against the Whittier Alliance," or has "otherwise disrupt[ed] the aims and purposes of the Corporation."

39. Subparagraph F was obviously added to the by-laws for the sole purpose of making sure that persons such as Plaintiffs, who have consistently opposed the racist policies of the incumbent Board, will never be permitted to run for the Board.

40. I and the other Plaintiffs have, *inter alia*, demanded that, because of the racist policies being pursued by the incumbent Executive Director, that she be fired from her job.

41. We have also demanded that the entire Board of Directors be removed because of the racist policies they have been following.

42. It is clear that this new provision is put in place to enable the incumbent Board to stifle the free speech of potential Board candidates and to ensure that no one who opposes their policy will ever be permitted to run for the Board.

43. Plaintiffs assert their constitutional claims against Defendant Whittier Alliance because, notwithstanding its nominally private nature, its relationship with Defendant City of Minneapolis, and its assumption of governmental authority and power, clearly indicates that it is a co-participant in instrumentality of Defendant City of Minneapolis.

44. The facts that support such a proposition are the following:

   a. As the Whittier Alliance's own documents clearly indicate, the overwhelming majority of its funding comes from Defendant City of Minneapolis. This, in turn, comes from the federal government's community block grant funds.
   b. The process involves Whittier developing plans for the expenditure of governmental funds in the Whittier neighborhood. The plan will include expenditures on projects such as housing, public safety, and youth programs, all of which are essentially governmental functions.
   c. The Whittier Alliance will receive governmental funds, with City Council approval, for the expenditure on what amounts to public purposes. Indeed, the Whittier Alliance Board may transfer up to $25,000 in government funds from one area to another, without the approval of the City Council.
   d. The City Council, as a matter of course, defers to the Whittier Alliance on many governmental decisions. For example, if a private developer wishes to develop a project within the Whittier neighborhood, and City approval is required for the project, the project is routinely submitted to the Whittier Alliance as a pre-condition for governmental approval.

45. This delegation of governmental functions from the City to the Whittier Alliance, the fact that the Whittier Alliance acts as an instrumentality of city government in pursuing these projects, and the fact that the city government requires a democratic process within Whittier Alliance, all demonstrate that the action of the Whittier Alliance is, in fact, action of the City of Minneapolis.

9

    46.    This is especially true with respect to the adoption of the by-laws in question, in that, based upon Mr. Rubedor's letter, these by-law revisions were created under the direct supervision of the City's "Neighborhood Support Specialist assigned to Whittier."

    47.    I execute this Affidavit in support of the attached Motion for Preliminary Injunction and Temporary Restraining Order.

                                                        /s/ Zachary Metoyer
                                                        Zachary Metoyer

Subscribed and sworn to before me
this 23rd day of March, 2015.
/s/ Martha Rubio Schiller
Notary Public
My Commission Expires: 01/31/16