# WHITTIER ALLIANCE
## By-Laws
### Approved March 30, 1995
### Revised & Approved November 29, 2001
### Updated & Approved March 30, 2006

## ARTICLE I    NAME

**Section 1.**   The name of the corporation shall be the Whittier Alliance. All references to the Corporation shall refer to the Whittier Alliance and its Membership.

**Section 2.**   The Whittier Neighborhood is geographically defined as bounded by Franklin Avenue on the north, Interstate 35W on the east, Lyndale Avenue South on the west, and Lake Street on the south, in the City of Minneapolis

## ARTICLE II    PURPOSE

**Section 1.**   The Mission of the Whittier Alliance is to ensure safety and livability by facilitating, advocating and leading the diverse voices of the Whittier Neighborhood.

**Section 2.**   The Vision of the Whittier Alliance is to mobilize the human and financial resources, information, and technical assistance necessary to effectively provide leadership to organize and implement a base of operation for citizen participation.

**Section 3.**   The Whittier Alliance is organized to advocate and provide education and resources to promote the welfare of the Whittier Neighborhood

## ARTICLE III    MEMBERSHIP

**Section 1.**   **General Membership** of this corporation is open to everyone who:
   A. Is eighteen (18) years or older; and
   B. Resides, owns property, or owns or represents a for profit or non-profit business (1 representative per business) in the Whittier Neighborhood, and;
   C. Supports the aims and purposes of the Corporation as per Article II, and;
   D. Agrees to abide by its Articles of Incorporation and By-Laws.

**Section 2:**   **Activating Membership:**  Members of the Corporation are admitted to the organization by express or implied consent by:
   A. Signing in at any meeting of the Membership, or
   B. Calling the neighborhood organization to request information, or

C. Making a contribution to the organization, or

D. Receiving a mailing from the Corporation.

**Section 3.** **Voting Rights of Membership** All members, as specified in Article III Sec. 1, who wish to vote at any Whittier Alliance meeting must provide  proof of membership by providing:

A. **Resident:** A state issued drivers license or state ID card that contains a photo of the person wishing to vote and states the Whittier address of the resident.  If the address on the ID card does not match the resident's address, proof can be determined by a current utility bill or payroll statement with a Whittier address and the photo ID.

B. **Property Owner:** A state issued photo ID and a current utility bill as above, or a current property tax statement with the property owner name and the Whittier property address.

C. **Business Owner:** Each Whittier for-profit or non-profit business has one (1) vote.  The business or appointed representative of the business must provide proof that the business is located in Whittier by presenting a copy of the business location in Whittier, by presenting a copy of the business license, a copy of a current utility bill as above, a listing in the current Minneapolis Phone book or a listing in the current Whittier Business directory.

The appointed representative (non-owner) must provide a letter on corporate letterhead, signed by the owner or managing director, authorizing him or her a the representative of the business or organization with the right to vote on behalf of the business or organization.

**Section 4.** **Member Master List** A list of members, who have previously established the right to vote per Article III Section 3,  will be kept at the Whittier Alliance office and brought to meetings. Once a member is on the master list they only need to bring their ID to a meeting. The list will be renewed each year commencing with the Annual Meeting.

**Section 5.** **Members' Rights** Rights of members may be exercised immediately. All members have the "right to voice" at any Whittier meeting.

**Section 6.** **Member Transfer** No member may transfer his or her membership or any rights arising there from other than as specified in Article III, Sec. 3. C.

**Section 7.** **Member Dues** No dues will be required for membership.

**Section 8.** **Termination of Membership** Membership ceases when the member no longer lives, owns property or a business or is a representative of a business in Whittier.

## ARTICLE IV    MEETINGS OF THE MEMBERSHIP

**Section 1.**    **Signing In:** Attendees at all Whittier Alliance meetings must sign in.

**Section 2.**    **Types of Meetings:**

    **A. Acting Committee Meetings:** Regularly scheduled meeting of the committees established by the Whittier Alliance at the Annual Meeting are open to the membership. At least 5 eligible members of the Corporation must be present in order to vote on issues at a regular meeting.

    **B. Annual Meeting:** An annual meeting of the members shall be held during March or April of each year at the time and place set by the Board of Directors. A quorum at the annual meeting for the transaction of business shall consist of fifty (50) members whose voting eligibility has been verified. Each eligible voting member may vote only once per nominated candidate per ballot in an election.

    At such time during the Annual Meeting:

      **1.** The board officers and committee chairs shall present reports of the activities and financial condition of the Corporation
      **2.** Directors shall be elected
      **3.** Acting Committees of the Board shall be established
      **4.** Other membership business may be transacted.

    **C. Special Meetings:** Special meetings of the members may be called at any time by majority vote of the Board of Directors, or upon written request to the Chair of the Board of Directors by fifty (50) members, whose membership can be verified, and whose call shall state the purpose of the meeting.

**Section 3.**    **Notice**    Notice of any meeting of the general membership shall be given in writing to members at least fifteen (15) days, but no more than thirty (30) days, prior to the meeting and shall specify the time, place and agenda of the meeting. Public notice may include any or all of the following: an advertisement placed in a newspaper serving the Whittier neighborhood, a mailing, fliers or electronic posting in a good faith effort to notify the Whittier neighborhood.

**Section 4.**    **Place of Meeting**    Meetings of the membership shall be held at any handicap accessible location within the Whittier Neighborhood designated by the Board of Directors.

**Section 5.**    **Voting and Proxies**

    **A.** Passage of a motion or resolution at all meetings shall require the vote of a majority of the eligible voting members present at the meeting unless otherwise required by these by-laws or by law.

    **B.** Voting cards may be used at meetings. Written ballots will be used upon request by any member.

      **C.** Proxies are prohibited.

**Section 6.**   **Grievance Procedure**   The Board of Directors shall maintain a grievance procedure to resolve all non-personnel related grievances of the membership.

# ARTICLE V   BOARD OF DIRECTORS

**Section 1.**   **General Powers**   The business and property of the Corporation shall be managed and controlled by the Board of Directors. The Board shall conduct meetings, transact the business, manage the affairs and determine strategic planning and policy for the Corporation.  It shall exercise all such powers subject to the provisions of the Articles of Incorporation, these By-Laws and all applicable laws, and with fiduciary responsibility to the Corporation and its membership.

**Section 2.**   **Qualifications**   Each director on the Board of Directors shall be a member of this corporation, per Article III, Section I.

**Section 3.**   **Number**   The Board of Directors shall be composed of the following:
1. No more than fifteen (15) directors elected at-large.
2. The Chair of each recognized Board Acting Committee who is elected in accordance with Article VIII, Section 2, Subsection B of these By-Laws, shall automatically become a director, if not already elected otherwise.
3. No more than two (2) representatives elected at the first  Business Association meeting immediately after the Annual Meeting from each of the following:
    A.  The Whittier Business Association for-profit sector.
    B.  The Whittier Business Association non-profit sector.

**Section 4.**   **Elections**

   **Subsection A.**   **Nominations**   Any member of the Corporation may become a candidate for Director by being recruited by the nominations committee as designated in Article VIII Section 6 or by submitting a nomination in a time and manner established by the Board of Directors prior to the Annual Meeting or prior to a Special Meeting called for the purpose of a special election. The Board of Directors shall receive these nominations, determine that they are eligible to serve, and shall establish a ballot of all eligible candidates. Nominations shall be in writing and must include: candidates name, address and proof of eligibility for this position. Nominations will not be taken from the floor.

**Section 5.**   **Tenure**   All board terms are staggered. The fifteen (15) at-large directors shall be elected to serve three (3) year staggered terms.  The five (5) candidates receiving the greatest number of votes at each annual meeting shall serve as directors.
    **A.** Five (5) directors shall be elected for three (3) year terms at each annual meeting.
    **B.** The Chair of each recognized Board Acting committee, who has been elected in accordance with Article VIII, Section 3, Subsection B, shall remain on the Board only as long as they maintain the committee chair.

**C.**   Those elected as Business Association Representatives are elected for a one (1) year term at the first Business Association meeting following the Annual Meeting.

**Section 6.   Compensation**   Directors shall receive no compensation for their services as directors. No director shall receive payment or compensation when he or she renders administrative, professional or any other bona fide services to the Corporation

**A.**   Directors may be reimbursed for reasonable out-of-pocket expenses incurred as a director with prior approval of the Board Finance Committee.

**B.**   To avoid any direct or indirect guiding of public and/or Corporate policy and in any appearance of self interest, directors shall neither seek employment or contracts with the Whittier Alliance for one year following service as a director unless approved by two-thirds (2/3) of the directors present.

**Section 7.   Removal of Directors**

**Subsection A.   Automatic Removal**   Any Director shall be automatically removed if found to no longer be a member of the Corporation.

**Subsection B.   Removal for Absences**   Any Director shall be removed automatically from office if he or she has missed three (3) Board meetings during a one-year period from the first board meeting after the annual meeting. An absence will be recorded if a director misses 1/3 of the board meeting. A Director so removed may appeal in writing to the Secretary of the Board. This appeal must be received by the Board Secretary ten (10) days before the next regularly scheduled meeting after the third absence; the board may then reinstate the director by a majority vote. After reinstatement, the reinstated director will be allowed 1 additional absence until the next annual meeting or he/she shall be removed from office.

**Subsection C.   Removal By Board Action**   Any Director may be removed from office, with or without cause, by a two-thirds (2/3) vote of the entire membership of the board at a regular meeting or special meeting of the board called for that purpose. The Director must receive, at least fifteen (15) days prior to the meeting, written notification of such action and the right to be heard thereon.

**Subsection D. Removal Notification**   The Board of Directors shall notify in writing to the director's last known address that the director has been removed under provisions of Article V, Section 7.

**Section 8.   Resignation** A Board member may resign at any time by giving notice in writing. Such resignation is effective immediately upon receipt unless specified in the Director's letter.

**Section 9.   Vacancies**   In the event of a board member vacancy due to death, resignation, or removal of any director, the Board may elect a successor from the same category per Article V, Section 3, to fill the vacancy for the remaining portion of the term.

Criteria for filling vacancies may include, but are not limited to, candidates who received votes for director at the preceding annual meeting, neighborhood members who regularly attend board, committee and/or task force meetings.

## Article VI  MEETINGS OF THE BOARD OF DIRECTORS

**Section 1.   REGULAR MEETINGS**          The Board of Directors shall meet monthly at least eleven (11) times per calendar year.  One of these meetings shall coincide with the Annual Meeting of the Membership in March or April. These regular meetings shall be held at such time and place within the Whittier Neighborhood that is handicapped accessible as fixed by resolution of the Board of Directors.

**Section 2   ANNUAL MEETING**          The Board of Directors shall convene an annual meeting of the membership in March or April of each year.

**Section 3.   SPECIAL MEETINGS**          Special meetings may be called by the Chair of the Board of Directors, or upon request of the majority of the Directors, or by a majority of the members of the Executive Committee.

**Section 4.   NOTICE**          Written (e.g. electronic, US postal service, board agenda) notice of regular meetings shall be distributed to all directors at least five (5) days prior and no more than thirty (30) days prior to the meeting.  Written notice of any special meeting shall be distributed to all directors and be given at least forty-eight (48) hours in advance of such meeting.  Required notice of any meeting may be waived by any director before or after a meeting.  Appearance at any meeting by a director shall be deemed a waiver of such required notice.

**Section 5.   QUORUM**          A quorum for the transaction of business shall consist of one-half (1/2) of the Directors. Quorum need not be maintained for the duration of the meeting in order to conduct business.

**Section 6.   VOTING**          After quorum has been established, passage of a motion or resolution shall require a vote of a majority of the directors present at the meeting.

## ARTICLE VII   OFFICERS OF THE BOARD

**Section 1.   OFFICERS**          The officers of the Corporation shall consist of the Chair, the Vice Chair, the Secretary and the Treasurer.  Except as provided in these By-Laws, the Board of Directors shall fix the powers and duties of all officers. No person may hold two offices at the same time.

**Section 2.   ELECTIONS**          The Board shall elect officers from among its directors at the first Board meeting following the Annual Meeting.  The officers shall serve one (1) year through the next Annual Meeting, or until their earlier resignation,  removal from office, or loss of membership in the Alliance. Officers elected mid-term shall serve the remainder of the term through the next Annual Meeting.

**Section 3.** **REMOVAL** Any officer may be removed from office, with or without cause, at any meeting of the Board by a majority vote of the directors present at the meeting. The officer shall receive written notice 15 days prior that such an action is pending and has the right to be heard thereon.

**Section 4.** **VACANCIES** In the event of a vacancy due to the death, resignation, or removal of any officer, the Board shall elect another Director as successor to fill the vacancy for the remaining portion of the term.

**Section 5.** **CHAIR** The Chair shall schedule and preside at all meetings of the Board of Directors and of the Membership. The Chair shall be considered "President" of the Corporation for the sole purpose of carrying out the duties of signatory agent and may execute documents on behalf of the Corporation. The Chair shall be entitled to vote on all matters before the Board in the same manner as any other director. The Chair shall perform all duties usually pertaining to that office and such other duties as the Board may prescribe. The Chair shall be the spokesperson for the Corporation unless otherwise noted.

**Section 6.** **VICE-CHAIR** The Vice Chair shall perform the duties of the Chair in the absence of the Chair. The Vice-Chair shall perform such duties as may from time to time be prescribed by the Board.

**Section 7.** **SECRETARY** The Secretary shall be secretary of the meetings of the Board of Directors and of the Membership, and shall see that a correct record of all proceedings of the meetings of the Board of Directors and of the Membership is kept in the appropriate minute book of the Corporation. As may be necessary, the Secretary shall sign and execute such documents for the transaction of business by the Corporation. The Secretary shall perform such other duties as may from time to time be prescribed by the Board of Directors.

**Section 8.** **TREASURER** The Treasurer shall cause to be kept accurate accounts of all monies of the Corporation received or disbursed and shall present to the Board of Directors, whenever required, an account of the financial condition of the Corporation. The Treasurer shall perform such other duties as may from time to time be prescribed by the Board of Directors.

## ARTICLE VIII    COMMITTEES OF THE BOARD

**Section 1.** **EXECUTIVE COMMITTEE** The Executive Committee shall consist of the four (4) officers per Article VII, Section 1. The Executive Committee shall meet as needed or by majority vote of the Executive Committee. The Executive Committee shall perform the emergency and predesignated functions of the Board of Directors in the interim between board meetings subject to ratification by the board. The Executive Committee shall set the board meeting agenda and make recommendations to the Board in the areas of administrative policy.

**Section 2.** **FINANCE COMMITTEE** The Finance Committee shall report to the Board on the financial health and fundraising efforts of the Corporation. The Treasurer

shall be the Chair of this committee.

## Section 3.   ACTING COMMITTEES

**Subsection A.**   At the Annual Meeting the Membership of the Corporation shall adopt by a majority vote, upon recommendation of the Board, the committees to be recognized as Acting Committees for the following year.

**Subsection B.**   Acting Committee membership shall be open to all Members of the Corporation. The Acting Committees shall meet regularly at such time and place as is set by the specific committee. Each committee shall elect an Acting Committee Chair, who will also serve on the Board, from its eligible members at its first meeting after the Annual Meeting for a term of one year.

**1.** An Acting Committee Chair may be removed with or without cause by majority vote of the Board of Directors.   Should the Committee Chair become vacant, an election shall be held by the Committee to fill the remainder of the year until the next Annual Meeting.

**2.** The Acting Committee Chair is responsible for working with the appropriate staff to set the time, place and agenda, and to run the meetings of the committee. Each committee shall adopt procedures, approved by the Board, for hearing options and for developing and evaluating recommendations to the Board.

## Section 4.   ACCESSORY COMMITTEES & TASK FORCES   The Board from time to time may establish committees and task forces, or call into activity a committee or task force for the purpose of completing certain tasks or addressing specific issues. The chairs(s) of these committees shall not have a seat on the Board unless previously elected at-large, an Acting Committee chair or a Business Association representative.

**Subsection A. Personnel Committee:** The Committee shall consist of at least three (3) members. At least one (1) is a member of the Board of Directors; at least one (1) is selected because of experience in the personnel field. Committee members must be members of the Corporation. The Personnel Committee shall meet as needed.

**Subsection B. Grievance Committee:**   Board members shall volunteer to serve as needed on the Grievance Committee.  The Grievance Committee shall report to the Board of Directors.  Each grievance shall require a new random drawing to create the Grievance Committee. *Changes*

**Subsection C. Nominations Committee:**   The Nominations Committee for Board Candidates may be comprised of the Chairs of the Acting Committees and other interested members of the Corporation. The committee shall do outreach to recruit candidates and accept nominations from eligible members for the Board of Directors consistent with Article V Section 4 Sub A.  The nominated slate  of candidates shall be prepared in advance of the Annual Meeting to be presented at the Annual Meeting.

**Subsection D.** **Special Committees:** The Board may from time to time establish and appoint such other committees and delegate to such committee's powers and responsibilities, as the Board may deem necessary and appropriate. Committee members shall include at least one (1) director and report to the appropriate committee and the Board.

**Subsection E. Resource Development:** The Resource Development Committee shall consist of board members, volunteers, community members and staff. The Committee will strategically plan and implement fund raising campaigns, events and identify funding opportunities for the Whittier Alliance consistent with the mission/vision/objectives.

**Subsection F. Task Forces:** The Board may from time to time establish temporary task forces, as it deems necessary to carry out specific activities within a specific time frame. Task Force members shall include at least one (1) director and report to the appropriate committee and the Board.

## ARTICLE IX CONFLICT OF INTEREST

**Section 1.** **Definition:** A conflict of interest exists when a director, member of the corporation, employee, or a relative of the director, member or employee, is also an officer, board member or employee of an organization, group or business which may receive financial benefit from an action being considered by the Board of Directors or a committee on which that director serves. A conflict of interest may also exist if the loyalties interfere with their duty to the Corporation.

**Section 2.** **Voting:** A director, member or family member who is in conflict of interest must so declare when the specific action is being considered (i.e. prior to the vote) and shall abstain from discussion and voting on that issue or motion before the board, committee, or task force. Specific information may be requested from the conflicted member, but the response must be limited to the request.

**Section 3.** **Removal:** Any director who does not properly declare a conflict of interest shall be removed from the board, according to Article V, Sec. 7, Subsection C.

## ARTICLE X BOOKS AND RECORDS

**Section 1.** **SEAL** The Corporation shall have no seal.

**Section 2.** **BOOKS, RECORDS AND MINUTES** The Board shall keep or cause to be kept complete books of account, personnel records and minutes of meetings of the Board of Directors and all committees and such additional record and books of account as the Board deems necessary for the conduct of the corporate activities of the Corporation.

**Section 3.** **AUDIT** The board shall cause to have the records and books of account of the Corporation an annual review and close of the books for the fiscal year.

An audit of the financial records will be conducted bi-annually or for any year that the annual budget exceeds $200,000.

**Section 4.**    **FISCAL YEAR**     The fiscal year of the Corporation shall be the calendar year.

**Section 5.**    **OFFICE**     The registered office of the Corporation shall be in the Whittier Neighborhood, in the City of Minneapolis, Minnesota. The principle office of the Corporation, which need not be the same as the registered office, shall also be located within the City of Minneapolis. The Corporation may have other offices as determined by the Board.

## ARTICLE XI    INDEMNIFICATION

**Section 1.**    **LIABILITY**     Officers, directors, staff and members of the Corporation shall not be held personally liable for legal action against the corporation. However, Officers and Directors have a fiduciary duty and can be held personally liability per the IRS code if the duty is violated.

## Section 2.   INDEMNIFICATION

**Subsection A.**     The Corporation shall fully indemnify, to the extent permitted by the statutes and decisional law of the State of Minnesota, each person who is a member, director, officer or employee of the Corporation, whether or not then in office, and the executors, administrators or legal representatives of any such person, for any and all reasonable costs and expenses (including the cost of reasonable settlements made with a view to curtailment of cost of litigation) and counsel fees, paid or incurred, in connection with or arising out of any action, suit or proceeding (civil or criminal, actual or threatened) to which any such person may be made a party by reason of being a member, director or officer of the Corporation.

**Subsection B.**     Such indemnification shall be subject to in any such action, suit or proceeding such person shall not have been finally adjudged therein to have been negligent or to have been guilty of misconduct in the performance of his or her duties as a member, director or officer. The standard of conduct shall be for such person to have acted in good faith and in a manner believed to be in or not opposed to the best interest of the Corporation, and had reasonable cause to believe such conduct was unlawful.

**Subsection C.**     The indemnification provided by this By-Law shall not exclude any other right to which an officer may be entitled under any agreement or vote, both as to action in his official capacity and as to action in another capacity while holding such office, and shall not imply that the Corporation may not provide lawful indemnification not expressly provided in this By-Law.

**Section 3.**    **STANDARD OF CONDUCT**     Officers, directors and members of the Corporation shall be held to a Standard of Conduct: to discharge the duties of an office in good faith, in a manner each one reasonably believes to be in the best interests of the Corporation, with the care an ordinarily prudent person in a like position would

exercise under similar circumstances. Such standards may be made more stringent, but not less so, only by resolution of the Board of Directors. Disputes over standards of conduct shall be resolved through binding arbitration with Minneapolis Mediation Program.

An officer is not considered to be a trustee with respect to the Corporation or with respect to property held or administered by the Corporation, including without limit, property that may be subject to restrictions imposed by the donor or transferor of the property.

**Section 4.** **INSURANCE** The Board of Directors shall cause to have Officers and Directors Insurance for the Corporation. The Corporation may purchase and maintain insurance on behalf of any officer, director or employee against any liability asserted against him/her and incurred by him/her in such capacity acting for the Corporation. The Whittier Alliance will secure general liability insurance in an amount sufficient to meet he needs of the Corporation.

## ARTICLE XII    NON-DISCRIMINATION

**Section 1.** No person shall be discriminated against by the Corporation in its Membership policy, in participation on its Board of Directors and committees, in its hiring practices, in its delivery of services, or in other corporate business on the basis of race, color, creed, religion, national origin, gender, sexual orientation, disability, age (18 or over), marital status, veteran status, status with regard to public assistance, criminal record (where the offense is not validly related to the job, services or business), or other applicable protected classes.

**Section 2.** The Whittier Alliance shall strive to be inclusive in all its activities of all persons in the protected classes listed in Article XII, Section 1.

## ARTICLE XIII    AMENDMENTS TO BY-LAWS

**Section 1.** **By Board Action:**
   **Subsection A.** The Board of Directors shall have the authority to amend these By-Laws of the Corporation, except as provided in Article XIII, Section 2.

   **Subsection B.** Proposed By-Law amendments in Article XIII, Section I, Subsection A, must be given in writing to Board members at least fifteen (15) days in advance of the meeting at which such amendment will be considered.

   **Subsection C.** Amendments to the By-Laws shall require a two-thirds (2/3) majority vote of the Board of Directors at a regular meeting or a special meeting called for that purpose.

**Section 2.    By Membership Action:**

**Subsection A.**        Any By-Law amendment that affects the eligibility or determination of Membership or that affects the quorum or voting for meetings of the Membership can only be adopted by the eligible voting Membership of the Corporation.  Also, any By-Law amendment that affects the number of directors, their election, their qualifications or terms of office, or prescribing procedures for removing directors or filling vacancies can only be adopted by the eligible voting Membership of the Corporation.

**Subsection B.**        Any member of the Corporation may propose amendments in Article XIII, Section 2, Subsection A, by submitting the proposal to the Board of Directors with a request for a Special Meeting per Article IV, Section 2, Subsection C, and in a manner sufficient to meet notice requirement in Article XIII, Section 2, Subsection C.

**Subsection C.**        Proposed By-Law amendments in Article XIII, Section 2 must be available to Members of the Corporation at least fifteen (15) days in advance of the meeting at which such amendment will be considered.

**Subsection D.**        Amendments to the By-laws shall require a two-thirds (2/3) majority vote of the eligible voting Membership present at the Annual Meeting or a Special Meeting called for that purpose.

# Whittier Board Candidacy

## Marian@whittieralliance.org

Thu 3/20/2014 11:56 AM

To:Marian Biehn <marian@whittieralliance.org>;

Hello

Thank you for submitting your application for Whittier Alliance Board Candidacy. The Board met and reviewed all applications and determined that you do not meet all of the eligibility criteria at this time.

The job description you received for a position on the Board indicates that Board members are legally responsible for all activities of the organization, which is true for all Minnesota nonprofit corporations such as Whittier Alliance. The job description sets out specific categories of responsibility, including human resources, planning, finance, community relations, and organizational operations. The application for the Board position requested information about your experience working with Whittier Alliance, your skills and your interest in being a Board member. Because of the legal and financial responsibilities required of a member of the Board of Directors, the Board of Directors has determined that Board candidate eligibility rests not only on an applicant's residence or ownership of business or property in the Whittier neighborhood, but also on an applicant's documented history of engagement with the organization and support for the aims and purposes of Whittier Alliance (a criteria specified in Article III, Section 1 of the Bylaws). Your application did not indicate that you have participated in Whittier Alliance activities in the past and, for that reason, your application was not approved at this time.

We encourage you to actively participate in Whittier Alliance sponsored events in order to gain knowledge about the organization, its programs and its operations. With that experience, we encourage you to reapply to become a member of the Board of Directors of Whittier Alliance

Regards

Marian Biehn, Executive Director
Whittier Alliance
10 E. 25th St.
Minneapolis, MN 55404
Ph: 612-871-7756 Fax: 612-871-0650
www.whittieralliance.org

*Exhibit C*

**EQUAL VOICE FOR**



**South Whittier**

2910 Pillsbury Ave South
Suite 207
Minneapolis, MN 55408

April 1, 2014

Marian Biehn, Executive Director
Whittier Alliance
10 E. 25th St.
Minneapolis, MN 55404

Re:     Grievance against Whittier Alliance

Dear Ms. Biehn:

The undersigned are submitting this grievance, pursuant to Paragraph ID3 of the Citizen Participation Program Guidelines of the City of Minneapolis Community Planning and Economic Development Department, approved by the Minneapolis City Council on February 24, 2006.

Our grievances are as follows:

1. Grievants Basim Sabri, Wasfi Al Qutob, Mohamed Cali, Marty Schulenberg, and Jay Webb, were all wrongfully and unlawfully denied the opportunity to run for the Whittier Alliance Board of Directors at the March 27, 2014 annual meeting. All five of these individuals met the criteria to run for the board, as set forth in Article V, Sec. 2 of the Whittier Alliance By-Laws, in that all are members of the organization as defined in Article III, Sec. 1. All have applied for and been accepted as members of the organization. There is no other qualification set forth in the by-laws for board eligibility.

Notwithstanding the foregoing, all five were denied the right to run for the Board of Directors based upon an email from you, which was sent to all of them and attached hereto as Exhibit A. The email rejected their candidacies on the following bases:

"Because of the legal and financial responsibilities required of a member of the Board of Directors, the Board of Directors has determined that Board candidate eligibility rests not only on an applicant's residence or ownership of business property in the Whittier neighborhood, but also on an applicant's documented history of engagement with the organization and support for the aims and purposes of the Whittier Alliance (a criteria [sic] specified in Article III, Section 1 of the Bylaws). Your application did not indicate that you have participated in Whittier Alliance activities in the past and, for that reason, your application was not approved at this time."

Clearly, neither you nor the Board of Directors have any authority to impose any qualifications for Board candidacy above and beyond those set forth in Article V, Sec. 2 of the By-Laws, to-wit:

membership in the organization. Article III, Sec. 1, referenced in your email, is a qualification for membership, not board candidacy. All five disqualified candidates have been accepted for membership. Such action is particularly inappropriate for incumbent Board members to engage in, since they are, in essence, making up *post hoc* qualifications to deny opposition candidates the right to run against them. It is also highly improper for you, as an employee of Whittier Alliance, to be making up qualifications for your potential future supervisors.

Moreover, your conduct clearly violates Paragraph IA3 of the Citizen Participation Program Guidelines, which requires neighborhood organizations to "[e]nsure that membership is open to all residents of the geographically-defined neighborhood, with no barriers to participation or membership (such as membership dues, requiring attendance at a certain number of meetings before voting rights are conferred, etc.)." Your making up after-the-fact additional qualifications to run for the Board based upon prior activity within the organization is obviously incompatible with this requirement.

There are two other reasons why your actions and the Board's action in this regard are particularly egregious:

First of all, with the exception of Mr. Schulenberg, all disqualified candidates are members of racial, ethnic or religious minorities. Not only does such action violate the non-discrimination provisions of Article XII, Sec. 1 of the Whittier Alliance By-Laws, it clearly violates the provisions of Paragraph IA2 of the Citizen Participation Guidelines, which requires every neighborhood organization to "[r]epresent and provide for the participation of, the interests of all segments of the entire community, including, but not limited to, homeowners, renters, property owners, business owners, immigrants, non-English speakers, low-income residents and communities of color."

Secondly, all disqualified candidates are known by you to be opponents of incumbent Board policies and of your continued retention as executive director of the organization. Your selective application of fabricated criteria to your known political opponents clearly violates the First Amendment to the U.S. Constitution.

We expect the Board, at its April 22 meeting, to invalidate the results of the March 27 election and to call a new annual meeting at which all eligible candidates are permitted to run.

2. Grievant Zachary Metoyer, a former member of the Whittier Alliance Board of Directors, has an additional grievance. When on the Board, he was repeatedly solicited by you to make financial contributions to the organization and was specifically told by you that making such contributions was a requirement of membership on the Board. The By-Laws contain no such requirement, and the imposition of such a requirement plainly violates Paragraph IA2 of the Citizen Participation Guidelines as set forth above. Indeed, if you were to deliberately adopt a policy to limit Board membership to wealthy white people, it would be hard to improve on one that requires financial contribution as a precondition to Board membership.

Therefore, in addition to calling for new Board elections, we demand the adoption of a policy making it clear that financial contribution is not a requirement for Board membership.

If this actions are not taken at the April 22 Board meeting, we will proceed to file our grievance with the Development Finance Division of the Finance Department as per Paragraph ID of the Citizen Participation Guidelines. Rest assured, we are willing to go to court over these issues, if we cannot resolve our complaints administratively.

Basim Sabri

Wasfi Al Qutob

Marty Schulenberg

Mohamed Cali

Jay Webb

Zachary Metover

CC:   Lisa Bender
      Robert Cooper

# WHITTIER

## THE INTERNATIONAL NEIGHBORHOOD

September 29, 2014

Equal Voices for South Whittier
2910 Pillsbury Ave. S #207
Minneapolis, MN 55408

RE: Grievance against Whittier Alliance

In accordance with Phase 1, Step 2 of the Whittier Alliance Grievance Policy, your grievance was heard at the Whittier Board of Directors meeting on September 25, 2014. The grievance had previously been heard on June 5, 2014 with a letter stating the outcome sent on June 20.

The grievances as outlined in the April 1, 2014 letter were addressed by the grievants. Having been previously heard by the grievance committee and having reviewed the grievance prior to the board meeting, the Whittier Alliance board offered the following resolution to the grievants:

**Motion:** The Whittier Alliance Board of Directors moves to deny the grievance and the proposed resolution to redo the 2014 annual meeting. **Carried.**

The grievants/board candidates were given the same application with the same criteria, job description and summary of expectations as all candidates. The Whittier Alliance board reviewed all candidates per the Whittier Alliance By-Laws and received legal counsel on its decision. The final roster of 14 board candidates reflected race, cultural, gender, religious and housing diversity. However, to avoid future confusion the Whittier alliance board recommends the following resolution to the grievance:

**Motion:** The Whittier Alliance Board of Directors moves to complete a review of board candidate criteria and application process prior to the next Annual Meeting. **Carried.**

**Motion:** The Whittier Alliance Board of Directors moves to reject the grievance from Zachary Metoyer regarding his claim that he was required to financially support the Whittier Alliance for the following reasons: no organizational policy exists requiring financial support by board members and it is an allegation without documentation. **Carried**

Mr. Metoyer provided no documentation supporting his claim that there was a requirement for a financial donation.

At the June 5, 2014 grievance hearing regarding Mr. Metoyer's claim, a resolution was made by the Whittier Alliance to adopt a policy stating that no financial support of the organization is required by

Exhibit E



**Randall Tigue Law Office, P.A.**
201 Golden Valley Office Center
810 North Lilac Drive
Golden Valley, MN 55422
☎ (763) 529-9211
📠 (763) 529-9215
📧 tiguelaw@msn.com

*Randall D.B. Tigue,*
*Attorney at Law*

*Mimi Hasselbalch*
*Associate Attorney*

*Debra Schreiner*
*Administrative Assistant*

October 30, 2014

Robert Cooper
Senior NRP/Citizen Participation Specialist
350 S. 5th St., Room 325M
Minneapolis, MN 55415-1315

Re:   Grievance against Whittier Alliance

Dear Mr. Cooper: ·

I am writing again to seek to bring the grievance of Basim Sabri, Wasfi Qutob, Marty Schulenberg, Mohamed Cali, Jay Webb, and Zachary Metoyer against the Whittier Alliance, pursuant to Sec . VII of the 2014-2016 Community Participation Program for Minneapolis Neighborhood Organizations. The original grievance and attachments thereto are attached as Exhibit 1.

On Sept. 4, 2014, David Rubedor, Director of Neighborhood and Community Relations, in a letter attached hereto as Exhibit 2, remanded the grievance to the Whittier Alliance, with instructions to proceed to Step Two of the Whittier Grievance Procedure, which is a presentation of the grievance to the Whittier Alliance Board of Directors.

The grievants appeared before the Whittier Board on Sept. 25, 2014. At that time, the Whittier Board denied the grievances without discussion. Under the Whittier Alliance grievance procedure, a copy of which is attached to the original grievance as Exhibit B, the next step of the process is mediation with the city. Under the Whittier grievance procedure, a request for such mediation procedure must be made within seven days of receipt of the written notice of the Board's decision. Because there was a dispute as to whether the grievants had received a prior alleged notice, I specifically requested that notice of the board action be sent directly to me and to Robert Speeter, the other attorney representing the grievants. Erica Crist, board chair agreed to this procedure, and both Mr. Speeter and I provided Ms. Crist with our business cards, so she could send us the notices.

By Oct. 20, nearly a month after the hearing, neither Mr. Speeter nor I had received any notice from Whittier Alliance. As a result, I sent to Ms. Crist a letter, a copy of which is attached hereto as Exhibit 3, pointing out that neither Mr. Speeter nor I had received any written notice and demanding that we proceed to mediation immediately, without said notice.

In response, I received a letter from Ms. Crist, dated Oct. 27, 2014, attached hereto as Exhibit 4, claiming that Whittier had sent the notice to the grievants directly, notwithstanding her agreement that the notice be sent to Mr. Speeter and me. Note that the address to which the notice was allegedly sent was the same address and the earlier correspondence, which my clients did not receive. Because my clients did not demand mediation within seven days of this alleged notice, Whittier refused to participate in any mediation. At best, this was a deliberate attempt to make sure my clients did not received notice, so Whittier could avoid having to argue the merits of its baseless position before a mediator. At worst, I suspect that no notice was ever sent, since none of my clients received it.

I have, contemporaneously with this letter, sent a letter to Ms. Crist, a copy of which is attached hereto as Exhibit 5, in which I point out Ms. Crist's lack of integrity, and, more importantly agree that the Whittier Alliance grievance process has now been exhausted. We would therefore request that the city now consider our grievance on its merits.

Yours truly,

Randall Tigue
Attorney at Law

C: Basim Sabri
   Robert Speeter
   Ellen McVeigh



*Exhibit F*



**Minneapolis**
*City of Lakes*

**Neighborhood and Community Relations**

David Rubedor
Director

Crown Roller Mill, Room 425
105 Fifth Avenue South
Minneapolis, MN 55401

Office 612 673-3737
TTY Line 612 673-2626

ncr@minneapolismn.gov

December 18, 2014

Randall Tigue
201 Golden Valley Office Center
810 North Lilac Drive
Golden Valley, MN 55422

Erica Christ, Chair
Whittier Alliance
10 East 25th St.
Minneapolis, MN 55404

RE: October 30, 2014 grievance against the Whittier Alliance

Dear Mr. Tigue and Ms. Christ:

I have received the findings from Minneapolis Development Finance regarding Mr. Tigue's letter dated October 30th, 2014. This letter asked that NCR review a grievance filed by Mr. Tigue on behalf of Basim Sabri, Wafi Qutob, Marty Schulenberg, Mohamed Cali, Jay Webb and Zachary Metoyer all members of the Whittier Alliance.

Based on my review, I find that the grievance process has been properly followed by both Mr. Tigue and Whittier Alliance. I concur with the findings that Whittier Alliance has not violated their bylaws or Community Participation Program (CPP) guidelines. We encourage neighborhood organizations to exercise due diligence in following their articles, bylaws, and policies to ensure that new members and candidates for the board of directors are eligible.

The findings recommend that Neighborhood and Community Relations staff require Whittier Alliance to revise its bylaws to be more explicit on its election process and the qualifications for board candidacy; and to develop clear election procedures that guide its process and are included with other election materials. The Neighborhood Support Specialist assigned to Whittier has been working with Whittier Alliance to update their by-laws and will continue to assist with these items to assure that they are implemented well in advance of the next annual meeting.

If you, your clients, or the neighborhood organization is unsatisfied with my findings on this matter and our agreed upon resolution, you may appeal this matter to the Neighborhood and Community Engagement Commission (NCEC) within thirty days of this response. The NCEC will then convene a grievance committee to review the grievance.

Please contact me if you have any questions. Thank you for your attention to this important matter.

Sincerely,

David M. Rubedor
Director

Encl:   Copy of Findings and Attachments

www.minneapolismn.gov
Affirmative Action Employer

cc:   Bob Cooper, DFD
      Robert Thompson, NCR
      Michelle Chavez, NCR

Exhibit G

**MEMORANDUM**
Finance and Property Services Department
Enterprise Financial Management and Budget Division —
Development Finance

**Minneapolis**
*City of Lakes*

Date: December 4, 2014

TO: David Rubedor, Director, Neighborhood and Community Relations
Department

FROM: Robert Cooper, Senior NRP/Citizen Participation Specialist 

SUBJECT: **Grievance Filed Against the Whittier Alliance**

On November 10, 2014, the Neighborhood and Community Relations Department
(NCR) requested that Development Finance review a grievance dated October 30,
2014, from Randall Tigue on behalf of Basim Sabri, Wasfi Qutob, Marty Schulenberg,
Mohamed Cali, Jay Webb and Zachary Metoyer (the grievants) against the Whittier
Alliance. The grievance is included as **Attachment A** to this report.

#### Background

On March 27, 2014, the Whittier Alliance held its Annual Meeting at which five members
were elected to serve on the board of directors. The grievants had submitted
applications for board candidacy, but the Whittier Alliance Board determined that the
grievants did not meet all of the eligibility criteria to run for the board. Specifically, the
Board stated that the grievants' applications did not indicate any past participation in
Whittier Alliance activities, and therefore, they were not eligible to run.

In response to that decision, the grievants filed a grievance with the Whittier Alliance on
April 1, 2014. The grievance challenged the board's authority to impose any
qualifications for board candidacy beyond those explicitly stated in the Whittier Alliance
bylaws.

In accordance with the Whittier Alliance grievance procedure, Step One grievance
meetings were held on April 23, 2014, and June 5, 2014. The meetings did not produce
a resolution to the grievance.

On July 24, the grievants filed a complaint with the City of Minneapolis regarding
alleged violations by the Whittier Alliance of the Minnesota Open Meeting Law and the
Community Participation Program (CPP) guidelines.

On September 4, 2014, the NCR Director found that the Whittier Alliance had not violated the Minnesota Open Meeting Law or the CPP guidelines. The NCR Director encouraged both parties to continue to attempt to resolve the issues through the Whittier Alliance mediation process.

In a letter dated October 30, 2014, Mr. Tigue stated that the mediation process did not occur and again filed the grievance with the City of Minneapolis.

In a letter dated November 10, 2014, the NCR Director found that the grievance was properly before the City and transmitted the grievance to Development Finance for review.

## The Community Participation Program (CPP) Grievance Process

The City's CPP guidelines allow for grievances to be filed against neighborhood groups. The grievance process contained in the guidelines is as follows:

A grievance against a neighborhood organization may be filed with the City if the following conditions are met:
- The grievance is within the jurisdiction of the City's community participation contract with the neighborhood organization;
- The grievance is regarding the process used by the neighborhood organization (but not about decisions or outcomes), or the grievance is regarding the management or use of Community Participation Program funds in a manner that is inconsistent with the program's standards and expectations (see Section II.B Standards and Expectations above);
- The person filing the grievance is a member of, or eligible for membership in, the organization, or is otherwise directly affected by the actions of the organization; and
- The person filing the grievance has formally brought the issue to the attention of the neighborhood organization in a timely manner and the grievance has been addressed through the neighborhood organization's grievance procedure, or if the neighborhood organization has failed to respond to the grievance in a timely manner as addressed in the neighborhood organization's bylaws (but not to exceed 120 days).

A grievance must be submitted in writing to the NCR Department. Upon receipt of the grievance, NCR will undertake an investigation of the complaint and prepare a report of its findings for the NCR Director, and will report the grievance to the NCEC at its next meeting. The NCR Director will issue a formal response to the grievance within 45 days of its initial receipt. This response will include the findings of the investigation and a proposed resolution to the grievance.

If the person filing the grievance or the affected neighborhood organization is unsatisfied with the Director's findings or resolution, they may appeal the matter to the NCEC within thirty days of the official response. The NCEC will convene a grievance committee to review the grievance.

### The Grievance

The grievance filed with the City comprised six issues. These issues are outlined below, along with Development Finance's findings.

1. The grievants claim that the Whittier Alliance did not have the authority to impose qualifications for board membership beyond those set forth in the organization's bylaws.

   The Whittier Alliance bylaws state: "Any member of the Corporation may become a candidate for Director by being recruited by the nominations committee as designated in Article VIII Section 6 or by submitting a nomination in a time and manner established by the Board of Directors prior to the Annual Meeting or prior to a Special Meeting called for the purpose of a special election. The Board of Directors shall receive these nominations, determine that they are eligible to serve, and shall establish a ballot of all eligible candidates. Nominations shall be in writing and must include: candidates name, address and proof of eligibility for this position. Nominations will not be taken from the floor." (Article V, Section 4, Subsection A)

   The Whittier Alliance maintains that the Board of Directors Candidate Registration Form and the Board of Directors Job Description clearly include past participation as a qualification of candidacy. (See **Attachment B**.) The registration form does include a question regarding past participation in the organization and a statement to be signed by the candidate that reads, in part: "*I have read and understand the Whittier Alliance Board of Directors job description and responsibilities. I have participated in Whittier committees or volunteered for neighborhood activities on a regular basis.*"

   This question and certification has appeared on the registration form for at least the last three annual elections. This requirement also has been used in the past by the Whittier Alliance to deny candidacy.

   Further, the Whittier Alliance sought a legal opinion to inform the Board on the appropriateness of applying these criteria. (See **Attachment C**.) That legal opinion states that "[i]t is within the scope of the [Whittier Alliance] Board's authority to set criteria that it reasonably believes will produce an informed, experienced and prudent Board to manage its affairs."

   **Finding:** While the grievants are correct in that past participation is not an explicit qualification in the organization's bylaws, the Whittier Alliance clearly thought that it was acting within its authority in its use of this qualification to establish eligibility for candidacy. This is evidenced in both its past practices and in the legal opinion that it received in advance of this grievance.

   Therefore, the Whittier Alliance Board's imposition of past participation as a qualification for candidacy should not be considered a violation of the CPP guidelines.

2. The grievants state that the imposition of these qualifications by the Whittier Alliance board is inappropriate because it amounts to the incumbent board members disqualifying potential election opponents.

   The Whittier Alliance provided a legal opinion that states that such qualifications are appropriate. (See **Attachment C**.)

   **Finding:** Any eligibility criteria, including those codified in bylaws, have the effect of disqualifying potential opponents. The question, instead, is whether such criteria are used in an arbitrary and capricious manner.

   As noted above the use of past participation as a qualification has been used by the Whittier Alliance in previous elections. Therefore, it does not appear to have been applied arbitrarily for these five nominations. Also as stated above, the use of this qualification for candidacy should not be considered a violation of the CPP guidelines.

   Therefore, Development Finance does not find that the imposition of these qualifications to be a violation of the CPP guidelines.

3. The grievants state that it is equally inappropriate for the Whittier Alliance executive director to impose such qualifications for that employee's potential supervisor.

   The Whittier Alliance provided minutes of a Special Board meeting held on March 13, 2014, at which the decision on candidacy was made by the Whittier Alliance Board of Directors. (See **Attachment D**.) The notification to nominees deemed ineligible was sent by the executive director on March 20, 2014.

   **Finding:** In accordance with the organization's bylaws, the determination of candidate eligibility was made by the board at a special meeting called for that purpose. The notification to candidates of the board's findings by the Whittier Alliance Executive Director is an appropriate staff function.

4. The grievants claim that the imposition of these qualifications is a violation of the CPP guidelines requirement that membership is open to all residents with no barriers to participation or membership.

   **Finding:** The CPP guidelines do require that a funded organization must ensure that membership in the organization is open to all residents of the geographically defined neighborhood. Neighborhood organizations may not impose membership dues or require attendance at a certain number of meetings before voting rights are conferred.

   This requirement, however, relates specifically to membership in an organization. This same requirement does not extend to serving on the board of directors of that

4

organization. Because of the responsibilities that are conferred on an organization's board, the City long has allowed neighborhood organizations to establish appropriate additional requirements as a condition of eligibility for board positions. These eligibility requirements can include past participation in the organization.

Therefore, the requirement that candidates for the Whittier Alliance board must have some past participation with the organization is not a violation of the CPP guidelines.

5. The grievants claim that their disqualification was discriminatory and resulted in a "lily-white" board. The grievants claim that such action is a violation of the CPP guidelines that require organizations to represent and provide for the participation of all segments of the community.

The Whittier Alliance provided a break-down of the board and board candidates by a variety of indices. (See **Attachment E.**)

**Finding:** The grievants did not provide any evidence to support their claim of discrimination. Further, the information provided by the Whittier Alliance shows that neither the previous board nor the candidates for the current board are all white.

6. The grievants claim that their disqualifications are a violation of the U.S. Constitution.

**Finding:** This claim is not within the jurisdiction of the Community Participation Program grievance procedure.

### Recommendation

Development Finance does not find any of the above grievances to be violations of the CPP guidelines. However, Development Finance does recommend that NCR should require the Whittier Alliance to:
(1)  revise its bylaws to be more explicit on its election process and the qualifications for board candidacy; and
(2)  develop clear election procedures that guide its process and are included in its other election materials.

### Next Steps

In accordance with the CPP grievance process described above, upon receipt of this report, the NCR Director must issue a formal response by December 19, 2014, to the grievants and Whittier Alliance concerning the grievance filed with NCR on November 10, 2014.

Please contact us if you have any questions concerning this report.

5

Attachments:
A: Grievance letter to the City dated October 30, 2014, from Randall Tigue as
   representative of the grievants
   Exhibit 1:   Grievance letter to the City dated July 18, 2014, from Randall Tigue and
                Robert Speeter as representatives of the grievants
   Exhibit A1: Grievance letter to the Whittier Alliance dated April 1, 2014, from the
                grievants
   Exhibit A2: Email dated March 20, 2014, from Whittier Alliance to the candidates
                deemed ineligible to run for the board
   Exhibit B:   Whittier Alliance Grievance Policy
   Exhibit 2:   Grievance response letter dated September 4, 2014, from David
                Rubedor (NCR Director) to the grievants and Whittier Alliance
   Exhibit 3:   Letter from Randall Tigue to the Whittier Alliance dated October 20,
                2014, demanding mediation
   Exhibit 4:   Letter from Whittier Alliance to Randall Tigue dated October 27, 2014,
                denying mediation for the grievance
   Exhibit 5:   Letter from Randall Tigue to the Whittier Alliance dated October 30,
                2014, stating that the grievance would be filed with the City
B: Board of Directors Candidate Registration Form and Board of Directors Job
   Description and Responsibilities
C: Legal opinion from Borenstein and McVeigh Law Office dated March 10, 2014,
   regarding the application process for board candidates
D: Minutes of the March 13, 2014, Whittier Alliance Executive Committee/Special
   Board Meeting
E: Whittier Alliance 2013-14 Board Make Up

Exhibit H

# WHITTIER ALLIANCE
## By-Laws
### Approved March 30, 1995
### Revised & Approved November 29, 2001
### Updated & Approved March 30, 2006
### Updated & Approved January 15, 2015

## ARTICLE I     NAME

**Section 1.**   The name of the corporation shall be the Whittier Alliance. All references to the Corporation shall refer to the Whittier Alliance and its Membership.

**Section 2.**   The Whittier Neighborhood is geographically defined by the City of Minneapolis as bounded by the south side of Franklin Avenue, the west side of Interstate 35W, the east side of Lyndale Avenue South, and the north side of Lake Street, in the City of Minneapolis.

## ARTICLE II  PURPOSE

**Section 1.**   The Mission of the Whittier Alliance is to ensure safety and livability by facilitating, advocating and leading the diverse voices of the Whittier Neighborhood.

**Section 2.**   The Vision of the Whittier Alliance is to mobilize the human and financial resources, information, and technical assistance necessary to effectively provide leadership to organize and implement a base of operation for citizen participation.

**Section 3.**   The Whittier Alliance is organized to advocate and provide education and resources to promote the welfare of the Whittier Neighborhood

## ARTICLE III  MEMBERSHIP

**Section 1: Membership**   Membership of this corporation is open to everyone who is eighteen (18) years or older; agrees to abide by its Articles of Incorporation and By-Laws, and qualifies under one of the following criterions:
   A. Is a resident of Whittier
   B. owns property in Whittier
   C. owns a business in Whittier

**Section 2: Activating Membership:**   Once eligibility for membership is determined as stated in Article III Section 1, and other procedures established by the Whittier Alliance Board of Directors, membership in the corporation is activated by:

Page 1 of 16

**Subsection A.** **Resident:**   Stopping in person at the Whittier Alliance and being added to the Whittier neighborhood mailing list or signing-in at a Whittier Alliance meeting.

**Subsection B.** **Property Owner and Business Owner:**   Stopping in person at the Whittier Alliance and being added to the Whittier neighborhood mailing list.

**Subsection C.**   Activating membership does not automatically include member voting rights as specified in Article III Section 3.

**Section 3: <u>Establishing Member Voting Eligibility</u>**   All members, as specified in Article III Section1, who have activated their membership as specified in Article III Section 2, who wish to vote at any Whittier Alliance meeting must provide proof of membership eligibility. Only one (1) vote per member is permitted. Although a member may meet more than one membership criterion or own more than one business or property, that member receives one (1) vote only.

**Subsection A. Resident:**   Acceptable proofs of eligibility include:
**1.** A current state issued driver's license or current government or state issued ID card or student ID that contains a photo of the person wishing to vote, with the Whittier address of the resident.
**2.** If the address is not listed on the photo ID card or does not match the resident's address, proof can be established by providing a current utility bill, a current payroll statement, or a current bank statement that contains the residents name and Whittier address and a photo ID.

**Subsection B. Property:**   Each Whittier property owner has one (1) vote regardless of the number of properties, businesses or corporations they own in Whittier. Steps to establish voting eligibility and the acceptable proofs of eligibility include:
**1.** The property owner must pre-register and qualify the property by appearing in person at the Whittier Alliance, presenting a current state issued photo ID and a current utility bill, or a current bank Statement, or a current mortgage payment statement or a current property tax statement, each of which must list the property owner's name and the property address in Whittier. If the property owner's name is not listed in any such documents, then a copy of the articles of incorporation of the entity owning the property must be presented.
**2.** A representative may be appointed per Article III Section 3 Subsection D.

**Subsection C. Business:** Each Whittier business owner, for-profit and non-profit, has only one (1) vote regardless of the number of businesses, properties or corporations owned in Whittier. Steps to establish voting eligibility and the acceptable proofs of eligibility include: