## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Basim Sabri, Marty Schulenberg, Mohamed Cali, Jay Webb, and Zachary Metoyer, <br><br> Plaintiffs, <br><br> vs. <br><br> Whittier Alliance, a Minnesota not-for-profit, corporation, and City of Minneapolis, a municipal corporation, <br><br> Defendants. | Court File No.:  15-cv-01578 ADM/SER <br><br><br> **DEFENDANT WHITTIER ALLIANCE'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Defendant Whittier Alliance ("Alliance") respectfully requests that the Court dismiss the deficient Complaint brought by Plaintiffs Basim Sabri, Marty Schulenberg, Mohamed Cali, Jay Webb, and Zachary Metoyer (collectively "Plaintiffs").  This Court should dismiss the Complaint for three reasons:

1. This Court lacks subject-matter jurisdiction because Plaintiffs lack **standing** to bring their claims;

2.  This Court lacks subject-matter jurisdiction over Alliance because Alliance is not a **state actor** acting under color of state law, and the Court should decline to exercise supplemental jurisdiction over the state law claims brought pursuant to 28 U.S.C. § 1367; and

3. Plaintiffs' threadbare Complaint **fails to state claims** for which relief can be granted.

For all these reasons, Alliance requests that this Court dismiss with prejudice Plaintiffs' Complaint in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)6).

## I. FACTUAL BACKGROUND

Plaintiffs filed their Complaint and Motion for a Temporary Restraining Order (the "TRO Motion") just before the close of business on Tuesday, March 24, 2015, less than two days before Alliance's Annual Meeting.[1] On Wednesday March 25, 2015, Judge Tunheim heard oral argument on Plaintiffs' TRO Motion. That same day, Judge Tunheim denied Plaintiffs' TRO Motion and ordered Defendants Alliance and the City of Minneapolis ("City")[2] to respond to Plaintiffs' Complaint by April 1, 2015.[3]

---

[1] The timing of Plaintiffs' filing is confusing, given that the Annual Meeting occurs in the same month every year and the specific date was publicly announced at least thirty days in advance. *See* Christ Aff. 29.

[2] In addition to this Memorandum, Alliance also signs on to the City's arguments set forth in its Memorandum in support of the its Motion to Dismiss, to the extent applicable.

[3] The March 25, 2015 Order [Docket No. 10] requested that Alliance "respond to Plaintiffs' Complaint by Wednesday, April 1, 2015" but also directed the parties to focus briefing "primarily on this question [of jurisdiction] in preparation for the preliminary injunction motion." *Id.* at 3. Accordingly, Alliance has responded to the Complaint within the seven days set by the Court by filing the present Motion to Dismiss.

Nonetheless, Alliance is fully prepared to brief a response on the preliminary injunction issues if the Court so requests. Fundamentally, Plaintiffs' request for preliminary injunction warrants denial because they cannot succeed on the merits of their claims, for the reasons set forth fully in this Memorandum. Additionally, Plaintiffs fail to meet the other required showings sufficient to prevail on a preliminary injunction motion under the *Dataphase* factors. *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

Alliance holds community meetings to present and solicit information for neighborhood decisions, hosts community events and activities, and presents forums and seminars to educate the Whittier community about civic engagement and influence. Christ Aff. ¶ 9.  Alliance builds neighborhood relationships through numerous events annually, such as the Youth Field Day and the "Clinton Field Ice Cream Social." *Id.* ¶ 11. Alliance does not provide "direct social, housing, or educational services," but instead provides the Whittier community with lists of applicable agencies and service resources. *Id.* ¶ 11.

Alliance performs activities identified by the Alliance and Whittier community residents and businesses as a benefit to the Whittier community, which is located just south of downtown Minneapolis.  Christ Aff. ¶¶ 5-6.  The Whittier community is often referred to as "The International Neighborhood," and it is comprised of residents hailing from thirty countries and representing over twenty-five language groups.  *Id.* ¶ 7.

Alliance is a Minnesota 501(c)(3) nonprofit organization that is funded by private grants, its own fundraising efforts, and from the City of Minneapolis through the Neighborhood Revitalization Program ("NRP") and Community Participation Program ("CPP").  *See* Christ Aff. ¶¶ 3-4, 15; Christ Aff. Ex. 1 ("Alliance Articles"); Christ Aff. Ex. 2 ("2013 NRP Agreement"); *Id.* Ex. 3 ("2013 Alliance Annual Report"). Alliance does not lease property from the City of Minneapolis (the "City"), nor does it pay funds to the City. Christ Aff. ¶¶ 13-14.

The 2013 NRP Agreement specifically requires Alliance to have and to follow its own Articles of Incorporation and bylaws.  NRP Agreement Ex. A, Section A(2).  The NRP

Agreement also requires Alliance to "have no barriers to participation" and to "be a democratically elected and representative group of the Neighborhood." *Id.* Furthermore, Alliance agrees to "make every effort to ensure that participation in all phases of its activities is inclusive of all members of the neighborhood and represents the diversity of that membership." *Id.* The NRP Agreement does not reference the United States Constitution or the Minnesota Human Rights Act; it merely references the NRP (Minn. Stat. § 469.1831) and Minneapolis Code of Ordinances 419 (the NRP Ordinance).

Alliance is run by an unpaid volunteer Board of Directors. *Id.* ¶ 16. Candidates for a Director position must register and meet the minimum requirements to serve on the Board of Directors. *Id.* ¶ 18; *Id.* Ex. 4 ("Alliance Board Registration"). The City does not control or influence Alliance's elections for its Board of Directors, Alliance's maintenance of its online business directory, the drafting of Alliance's bylaws. *Id.* ¶ 18. No City representatives sit on the Alliance Board. *Id.* ¶ 19.

The City does not control, coerce, or even influence Alliance's elections for its Board of Directors. *Id.* ¶ 46. Neither does the City influence Alliance's maintenance of its online business directory. *Id.* ¶ 47. The City also does not influence Alliance's drafting or adoption of bylaws, but merely reviews the proposed bylaws to ensure they are compliant with the Neighborhood Revitalization Program set forth in Minnesota Statute Section 469.1831. *Id.* ¶ 48.

In 2014-2015, the Alliance Board of fourteen members was composed as follows: nine Caucasian men and women born in the United States, two European immigrants, one Vietnamese immigrant, one Israeli immigrant, and one Somali immigrant. *Id.* ¶ 20.

Plaintiff Zachary Metoyer ("Metoyer") and a Somali-American individual named Mohammed Isse were on the official ballot for the 2014 election, but both withdrew their candidacies from the ballot at the 2014 annual meeting prior to the vote. *Id.* ¶¶ 21-22; *Id.* Ex. 5 ("2014 Alliance Ballot").  Plaintiff Mohamed Cali ("Cali"), a Somali-American, submitted his candidacy for the 2014 election, but he failed to submit a document of business ownership within the Whittier neighborhood as required by the bylaws and therefore was not allowed to run for a position on the Alliance Board. Christ Aff. ¶ 24. Abdirahman Abdulle, a Somali-American man, received the highest number of votes and was elected to the Board in the 2014 election. *Id.* ¶ 23; Christ Aff. Ex. 5.

Plaintiffs Marty Schulenberg, a Caucasian male, and Jay Webb submitted their candidacy for the 2014 election, but they had no prior involvement with Alliance and so were ineligible to run. *Id.* ¶¶ 25-26. Plaintiff Basim Sabri submitted his candidacy for the 2014 election, but he has demonstrated repeatedly that he does not support the aims and purposes of the organization and so was ineligible to run.[4] *Id.* ¶ 27.

On March 26, 2015, Alliance held its Annual Meeting.  *Id.* ¶ 28.  The Annual Meeting was advertised thirty days in advance by both flyer and postcard.  The specific voting registration requirements were included in these notices and were translated into

---

[4] It is also unclear whether Sabri would be eligible to run as a candidate due to his indictment on several counts of bribery involving federal funds.  The alleged bribery was made to a member of the Minneapolis Board of Commissioners of the Minneapolis Community Development Agency. The bribe was related to a real estate development project in Minneapolis, which involved funding recommendations by the Neighborhood Revitalization Program and "neighborhood steering committees" like Alliance. *See generally U.S. v. Sabri*, 181 F. Supp. 2d 1145, 1146 n. 2 (D. Minn. 2002), *rev'd by* 326 F.3d 937 (8th Cir. 2003) and *Sabri v. U.S.*, 541 U.S. 600, 602 (2004).

both Spanish and Somali.  *Id.* ¶ 29; *Id.* Ex. 6 ("2015 Annual Meeting Flyer & Postcard").

Alliance also translated the entire Membership section of the bylaws into Somali and

Spanish and had copies available sixteen days in advance of the meeting, as well as at the

meeting. *Id.* ¶ 30.  The only individuals who applied as candidates for the 2015 election

were the same individuals who were ultimately listed on the official ballot: Laura Jean,

Mike O'Dell, Jesse Oyervides, Erin Sjoquist, and Kenya Weathers. *Id.* ¶ 31; *Id.* Ex. 8

("2015 Alliance Ballot").  All five candidates were elected to serve as Board members,

and the new members are a Caucasian male, two Caucasian females, one Hispanic male

and one African-American male. Christ Aff. ¶¶ 32-33.  None of the Plaintiffs in this

action ran for a position on the Alliance Board on March 26, 2015, nor were any of the

Plaintiffs in attendance.  *Id.* ¶¶ 34-35.  The eligible voting list applicable for the 2015

Annual Meeting includes approximately three-hundred named individuals, twenty-nine of

whom appear to have a Muslim or Somali origin. *Id.* ¶ 36.

The only Plaintiff who served on the Alliance Board is Metoyer.  The bylaws in

effect during his tenure in 2013 required removal of a Board member who missed three

monthly meetings within a one-year period. *Id.* ¶ 37; *Id.* Ex. 10 ("August 2013 Alliance

Letter to Metoyer").  Under the same bylaws, the Board member could appeal and be

reinstated, but then may not miss more than one more meeting within the same one-year

period. *Id.*  Metoyer missed five meetings and was consequently removed from the

Board. Christ Aff. ¶¶ 39-40; Christ Aff. Ex. 11 ("November 2013 Alliance Letter to

Metoyer"); Christ Aff. Ex. 12 ("January 2014 Alliance Letter to Metoyer").

Alliance recently amended its bylaws and those were approved by the Alliance membership on January 12, 2015. *Id.* ¶ 41; *Id.* Ex. 13 ("2015 Alliance Bylaws").  Under these Bylaws, membership in Alliance remained open to everyone at least eighteen years old who agrees to abide by Alliance's Articles of Incorporation and Bylaws, and who qualifies under one of the following criteria: is a resident of Whittier; owns property in Whittier; or owns a business in Whittier. 2015 Alliance Bylaws, art. III(1).  Business owners have the right to vote once they have activated their membership by stopping in person at the Alliance office and providing proof of ownership through a current state photo id and copy of business license, or a copy of a current bill or bank statement including the business name. *Id.* art. III(3)(C).  In order to run as a candidate for an at-large director position on the Alliance Board, an individual must be an eligible Alliance voting member for at least six months, demonstrate current and ongoing participation with Alliance, demonstrate attendance at Alliance meetings or task forces within the current year, support the aims and purposes of Alliance, and must not have committed an act of malice or defamation against Alliance or otherwise disrupt the aims and purposes of Alliance. *Id.* art. IV(2).  Alliance expressly prohibits discrimination on the basis of race or national origin, as well as other protected statuses. *Id.* art. XII(1).

## II.   ARGUMENT

### a.  *Plaintiffs' Claims Must be Dismissed Because Plaintiffs Lack Standing*

Plaintiffs lack standing to assert all their claims, and therefore their Complaint must be dismissed for lack of subject-matter jurisdiction under Article III of the U.S.

Constitution and Minnesota law.  Plaintiffs lack standing because they did not plead and cannot demonstrate that they suffered an injury in fact.

### i.   Plaintiffs Lack Standing for Federal Claims

"A plaintiff has the burden of establishing subject matter jurisdiction, for which standing is a prerequisite." *Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006) (citations omitted). The Eighth Circuit has explained:

> [t]o establish standing, a plaintiff is required to show that he or she had 'suffered an injury in fact, meaning that the injury is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.' Second, the injury must be traceable to the defendant's challenged action. Third, it must be 'likely' rather than 'speculative' that a favorable decision will redress the injury.

*Id.* (quoting *South Dakota Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 591 (8th Cir. 2003)); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010).  "[B]ecause jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset rather than deferring it until trial, as would occur with denial of a summary judgment motion."  *Osborn v. United States*, 918 F.2d 724 (8th Cir. 1990)

The only specific factual allegations of "exclusion" (and which Plaintiffs presumably use as the basis for all legal claims here) are the following:

> (a) Alliance interpreted its bylaws to deliberately exclude Somali-American businesses from membership and from voting in the organization's annual meeting;
>
> (b) Alliance deliberately failed to permit Somali businesses to register for the Alliance business directory;
>
> (c) Alliance deliberately denied to Plaintiffs the right to run for the board of directors at the 2014 annual meeting; and

      (d) Alliance deliberately adopted amendments to its bylaws for the
      deliberate purpose of excluding racial minorities from running for the
      Board of Directors.

Compl. ¶ 16.  No Plaintiff is a Somali-American business. Plaintiffs also failed to even

register for a candidacy for the 2015 election.  Plaintiffs, therefore, lack standing, and this

Court lacks federal subject-matter jurisdiction over this Complaint.

      The judicial power conferred by Article III may not be exercised unless a plaintiff

shows "that he personally has suffered some actual or threatened injury as a result of the

putatively illegal conduct of the defendant." *Gladstone, Realtors v. Village of Bellwood*,

441 U.S. 91, 99 (1979); *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001) ("The Art.

III judicial power exists only to redress . . . . injury to the complaining party, even though

the court's judgment may benefit others collaterally.") (quoting *Warth v. Selding*, 422

U.S. 490, 498-99 (1975)).  "It is not enough that the conduct of which the plaintiff

complains will injure *someone.* The complaining party must also show that he is within

the class of persons who will be concretely affected." *Blum v. Yaretsky*, 457 U.S. 991,

999 (1982). Additionally, a plaintiff who has suffered injury of a certain kind does not

have standing to litigate conduct of another, even similar, kind that he has not

experienced. *Id.*  A party cannot show an injury in fact by mere "[a]llegations of possible

future injury." *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990). To have standing, a

party must show that his injury is more than "imaginary or speculative." *Babbitt v. United

Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979) (citation omitted); *see also

Missouri Roundtable for Life v. Carnahan*, 676 F.3d 665, 672 (8th Cir. 2012)

None of the Plaintiffs have alleged they are Somali business owners or businesses who have been excluded from the business directory or from voting. They, therefore, have no standing to bring claims based on their allegations regarding Somali businesses being excluded from membership or from registering in the business directory.  *See Blum*, 457 U.S. at 999; *Baker v. Carr*, 369 U.S. 186, 209 (1962) (requiring a plaintiff to have a "personal stake in the outcome of the controversy").  Plaintiff Marty Schulenberg further lacks standing to assert any claims that he experienced racial discrimination, because he is not a racial minority. Christ Aff. ¶ 25.  Second, none of the Plaintiffs ran for the Board of Directors at the 2015 annual election. *Id.* ¶ 34. Therefore, Plaintiffs similarly lack standing to assert claims based on Alliance's alleged amendment of its bylaws to exclude racial minorities from running for the Board of Directors —— they have suffered no actual or threatened injury. *See Potthoff*, 245 F.3d at 715.  And in fact, an African-American candidate and an Hispanic candidate both ran and won seats on the Board of Directors.  Christ Aff. ¶ 33.  Finally, Plaintiffs either withdrew their candidacy or were ineligible to run for positions on the Board of Directors at the 2014 Annual Meeting, *id.* ¶¶ 21, 24-27,  so they also lack standing to assert allegations on that sole remaining factual basis.

### ii.  Plaintiffs Lack Standing to Bring MHRA Claim

Plaintiffs also lack standing to bring their MHRA claim.  Minnesota Courts apply a similar standard to federal standing rules.  "Standing is the requirement that a party has a sufficient stake in a justiciable controversy to seek relief from a court." *State by Humphrey v. Philip Morris, Inc.*, 551 N.W.2d 490, 493 (Minn.1996). Standing may be

"acquired in two ways: either the plaintiff has suffered some 'injury-in-fact' or the plaintiff is the beneficiary of some legislative enactment granting standing." *Id.*

Plaintiffs lack standing to assert a public services or business discrimination claim under Minnesota Statute Section 363A.  To the extent Plaintiffs' Third Count is brought pursuant to Section 363A.17(3)—the statutory citation referenced in the Complaint— Plaintiffs lack standing because they cannot show that they were, or attempted to be a party to a contract or other business transaction with Alliance.  In order to have standing to "assert a business-discrimination claim under Minn. Stat. § 363A.17(3), appellant must show both that respondent committed a discriminatory act in the performance of a contract and that she . . . had a contractual relationship with respondent." *Krueger v. Zeman Const. Co.*, 758 N.W.2d 881, 887 (Minn. Ct. App. 2008) *aff'd,* 781 N.W.2d 858 (Minn. 2010) (citation omitted).  Because Plaintiffs are not a party to the NRP Agreement between the City and Alliance, *see generally* 2013 NRP Agreement, or to any other contract or agreement with Defendants, they lack standing to bring their present Section 363A.17 claim.

Even if Plaintiffs actually intended to allege a claim that Alliance unlawfully discriminated against them with respect to public services pursuant to Section 363A.12, they similarly lack standing to bring such a claim.  "Public service" is a defined term in the MHRA, meaning "any public facility, department, agency, board of commission, ***owned, operated or managed by or on behalf of*** the state of Minnesota, or any subdivision thereof including any county, city, town, township, or independent district in

the state." Minn. Stat. § 363A.03, subd. 35 (emphasis added). As set forth more fully below, Alliance does not provide a "public service" because it is not a state actor. Plaintiff cannot, therefore, meet the even higher threshold of showing that Alliance is "owned, operated or managed by or on behalf of" the state or the City.  Minn. Stat. § 363A.03, subd. 35. Accordingly, Plaintiffs lack standing to bring this claim, for they cannot have been denied something which Alliance does not and could not offer.

Further, Plaintiffs have not alleged and could not demonstrate that they were discriminated against in their access or admission to a public service based on a protected status.  *O'Neal v. Moore*, Civil No. 06-2336, 2008 WL 5068947, at *18 (D. Minn. Aug. 22, 2008).  Their claims relate only to Board membership.  Such membership is not a service but rather a volunteer leadership opportunity not contemplated by the MHRA.  As a result, Plaintiffs have no "stake in a justiciable controversy [necessary] to seek relief from a court." *Philip Morris, Inc.*, 551 N.W.2d at 493. For all these reasons, Plaintiffs lack standing to assert their MHRA claims.

### b.  *Plaintiffs' Federal Claims Must be Dismissed for Lack of Subject-Matter Jurisdiction Because Alliance is Not a State Actor*

Plaintiffs' claims must also be dismissed for lack of subject-matter jurisdiction because Alliance is not a state actor.  This court lacks subject-matter jurisdiction over the federal claims pursuant to Rule 12(b)(1), and it should decline to exercise supplemental jurisdiction over the state law claims brought pursuant to 28 U.S.C. § 1367.[5]

---

[5] Where all federal claims are dismissed, "the balance of factors to be considered in deciding whether to exercise supplemental jurisdiction typically militates against exercising such jurisdiction" *Branch v. Gorman*, No. CIV. 11-2155, 2012 WL 4470440,

As a *private* nonprofit, Alliance cannot be sued for constitutional violations under the First or Fourteenth Amendments absent an allegation of facts that, if proved, would establish state action.  A court in this district has already found that a neighborhood organization like Alliance is **not** a state actor.  *See Rickmyer v. Browne*, 995 F. Supp. 2d 989, 999 (D. Minn. 2014) (dismissing all federal claims alleged against a neighborhood organization because it was not a governmental entity acting under color of state law). To demonstrate that an organization is a state actor, a plaintiff must allege sufficient facts to establish two elements: (1) that the alleged deprivation was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible;" and (2) that the actor is "a person who may be fairly said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  "Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." *Id.*

State action may be found only where the facts establish "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).  Actions taken by a private party may only be attributed to the State in several, fact-specific circumstances in which the government and a private actor are effectively indistinguishable or the provisions of the Constitution are imposed by a contract or

---

at *7 (D. Minn. Sept. 27, 2012) *aff'd,* 742 F.3d 1069 (8th Cir. 2014); *see also Johnson v. City of Shorewood*, 360 F.3d 810, 819 (8th Cir. 2004) (citing *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 30 n.7 (1988)).

regulation.  Plaintiffs do not allege sufficient facts in their Complaint to demonstrate

Alliance is a state actor.

In Plaintiffs' TRO Memorandum [Docket No. 3], they attempt to argue that

Alliance is a state actor under four "tests" utilized by courts to determine whether a

private party is a state actor: (1) where the State and the private party share a symbiotic

relationship, *see, e.g.*, *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 723-26 (1961)

(finding parking garage in state-owned building, operated with public funds to be a state

actor); (2) where the State commands and encourages the private actor's actions, *Moose*

*Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972) (finding state action based on a specific state

regulatory requirement); (3) conspiracy between the private actor and the State, *Lugar*,

457 U.S. at 937 (finding state action where a creditor utilized state procedural scheme to

deprive plaintiff of property); and (4) the "public function" test, *Jackson*, 419 U.S. at 353

(finding no state action even where state-regulated utility cut off customer's service

without notice or hearing).

Plaintiffs have failed to allege facts sufficient to construe Alliance as a state actor

under any of these standards.  The only basis in Plaintiffs' Complaint related to subject-

matter jurisdiction over Alliance is the unsupported legal conclusion that Alliance is a

"partner and instrumentality of [the City]." Compl. ¶¶ 4, 18.  Plaintiffs do not supply **any**

**facts** to support this statement.  Such a bald-faced claim is not enough to provide

jurisdiction.  *See, e.g.*, *Pendleton v. St. Louis Co.*, 178 F.3d 1007, 1011 (8th Cir. 1999) (to

consider a private employer a state actor under §1983, plaintiff must allege facts that

would show a mutual understanding or meeting of the minds between the private party

and a state actor); *Rickmyer*, 995 F. Supp. 2d at 1020 (dismissing federal claims against nonprofit neighborhood organization despite allegation that organization was "considered a government instrumental[ity]."). Accordingly, Alliance's actions do not constitute actions under color of law under any applicable test.

### i.   Alliance is not a state actor because it does not have a symbiotic relationship with the City.

Plaintiffs have failed to adequately allege Alliance was a state actor acting under color of law under any of the four state action tests which Plaintiffs claim are applicable in this matter.  *See* Pls.' PI Motion at 7-10; *see supra* Def.'s Mem at 4.  There is no symbiotic relationship between Alliance and the City which would make Alliance a state actor. Alliance does not lease public property, and it does not pay money to the City. Christ Aff. ¶¶ 13-14; c*ontra Burton*, 365 U.S. at 723 (finding that because the State profited from the private entity's discriminatory conduct, its actions were state action).[6] The City does not control, coerce, or even influence Alliance's board elections, business directory, or bylaws.  Christ Aff. ¶ 18; *see Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 412 (1995) (finding defendant railroad not a state actor even though its directors were appointed by the President and the government's influence was "pervasive"). Additionally, there are no City regulations or statutes that could arguably have been "intended either to overtly or covertly to encourage discrimination." *See Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1010 (8th Cir. 1993) (reversing district court

---

[6] Plaintiffs may argue that the relationship here is similar to the relationship in *Burton*, but the Supreme Court's *Burton* holding has since been limited solely to "lessees of public property," *Jackson*, 419 U.S. at 358, if it even continues to be valid law at all. *See Lebron.*, 513 U.S. at 409.

and holding that a bar was not a state actor on the basis of operating under a state-issued liquor license). For these reasons, Plaintiffs have not adequately alleged that Alliance is a state actor under the symbiotic relationship test.

### ii.   Alliance is not a state actor because it did not receive commands or encouragement from the City

Likewise, Plaintiffs have not adequately alleged that Alliance is a state actor under the command-and-encouragement test.  "The conduct of a private entity is not subject to constitutional scrutiny if the challenged action results from the exercise of private choice and not from state influence or coercion." *Lebron*, 513 U.S. at 411-12.  "[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum*, 457 U.S. at 1004 (analyzing the state action requirement of the Fourteenth Amendment and finding insufficient state action for jurisdiction).

Here, the City made no commands or encouragement regarding Alliance's decisions to amend or interpret its bylaws or to compile its business directory.  Christ Aff. ¶ 18.  Alliance alone made the decision to amend its bylaws, including how to determine eligibility for its business directory and its Board of Directors. *Id.* ¶ 41.  The City merely reviewed the bylaws for compliance with the NRP Agreement. *Id.* ¶ 48.  Such action falls far below the threshold showing required under the command-and-encouragement test.

Similarly regulation, even extensive regulation, does not transform a private actor into a state actor. The *Blum* Court considered that nursing homes were heavily regulated by both state and federal regulations. 457 U.S. at 1007-1010. Even though such regulation was extensive, the Court did not make the private actor's actions those of the state. *Id.* Similarly, in *Jackson*, the Supreme Court found that even though the regulations governing a utility were "extensive and detailed," such regulation did not make the entity a state actor. 419 U.S. at 350. Again, even where a state actor has the power to approve certain personnel decisions, such power is still insufficient to make a private actor's actions those of the state. *Rendell-Baker v. Kohn*, 457 U.S. 830, 841-42 (1982). Only where the regulation in some way "foster[s] or encourage[s] racial discrimination" does the regulation demonstrate joint participation significant enough to make a private actors' conduct attributable to the state. *Jackson*, 419 U.S. at 358 (quotation and citation omitted).

Here, there is no state regulation governing Alliance which would encourage or foster discrimination, and the minimal guidance and assistance from the City falls far below that required to make Alliance's actions those of the state. While Alliance must comply with the applicable portions of Minnesota Statute Section 469.1831, *see generally* 2013 NRP Agreement at 1, this statutory scheme merely sets forth the purpose and principles of the neighborhood revitalization program. *See* Minn. Stat. § 469.1831, subds. 3, 6(b). Only the general nonprofit statute – Minnesota Statue Section 317A – sets the parameters for Alliance's governance, including its bylaws. Notably, no

17

regulation governs specifics of the board director election process, minimum director

requirements, or compilation of business directories.

Additionally, even if all or virtually all of a private organization's income is

derived from government funding, it does not morph that organization's action's into

state action.  In *Blum*, the Supreme Court found no state action even when the defendant

nursing homes depended on the state to pay the medical expenses of more than ninety

percent of its patients, and to subsidize its operating and capital costs. 457 U.S. at 1011.

In *Rendell-Baker v. Kohn*, the Supreme Court held that when virtually all of the private

school's income came from government funding, its employment decisions did not

become state action subject to constitutional claims.  457 U.S. at 839-43. Similarly,

public defenders were found not to be state actors because even though all their funding

was from the state, the attorney-client relationship was the same as it would have been

had the funding come from another source.  *Polk Cnty. v. Dodson*, 454 U.S. 312, 320-24

(1981).  Like nursing homes, public defenders, and schools, neighborhood organizations

like Alliance do not become state actors "by reason of their significant or even total

engagement in performing public contracts." *Id.* at 841. Alliance receives a portion of its

budget through the NRP and Community Participation Programs, but it also has

independent private funding sources as well. Christ Aff. ¶ 15; Christ Aff. Ex. 3. For all

these reasons, Plaintiffs have not alleged and could not allege that Alliance is a state actor

under the command-and-encouragement test.

### iii. Alliance is not a state actor because it does not perform a public function

Alliance also is not a state actor under "public function" analysis.  Courts look to whether a private actor performs a public function to determine state action. The question is not simply whether the private entity is serving a "public function" but whether that function has been "traditionally the exclusive prerogative of the State." *Jackson*, 419 U.S. at 353.  "That a private entity performs a function which serves the public does not make its acts state action." *Kohn*, 457 U.S. at 842.  Examples of such public functions traditionally within the exclusive domain of the state are state political elections, *see, e.g.*, *Terry v. Adams*, 345 U.S. 461, 470 (1953), maintenance of a municipal park, *Evans v. Newton*, 382 U.S. 296 (1966), and company towns, *Marsh v. Alabama*, 326 U.S. 501 (1946).  *See also Jackson*, 419 U.S. at 352-53 (collecting numerous cases applying the public function test).  A utility company or a dining establishment operating pursuant to a liquor license, however much they serve the public, do not perform a public function. *Jackson*, 419 U.S. at 358-59; *Irvis*, 407 U.S. at 176-77.

Here, Alliance does not serve a public function.  As is evident from Alliance's Community Participation Program Application, the nonprofit uses social media and holds community meetings "to present and solicit information for neighborhood decisions," hosts community events and activities "to build neighborhood awareness and loyalty," and presents forums and seminars to educate the Whittier community about "broader civic influence." 2013 NRP Agreement, Ex. B at 1.  Alliance builds neighborhood relationships through events like Youth Field Day and the "Clinton Field Ice Cream

Social." *Id.* at 3.  Alliance does not provide "direct social, housing, or educational

services," but instead provides the Whittier community with lists of applicable agency

and service resources.  *Id.* at 4.  These goals and activities are important for the Whittier

community, but they are not public functions which have been "traditionally the

exclusive prerogative of the State." *Jackson*, 419 U.S. at 353.  Accordingly, Plaintiffs

have not sufficiently alleged facts necessary to demonstrate that Alliance is a state actor

under the public function test as well.

### iv.   Alliance is not a state actor because it was not in a joint conspiracy with the City

Finally, Alliance is not a state actor under the joint conspiracy test.  State action

requires more than "the mere approval or acquiescence of the State . . . ." *Sullivan*, 526

U.S. at 52.  Joint conspiracy or participation requires significant participation on the part

of the State in conjunction with the private actor, such as when a state creates a system

permitting a private party to apply to state officials for attachment of property. *Lugar*,

457 U.S. at 942; *see Sullivan*, 526 U.S. at 58 (construing *Lugar* narrowly and finding no

joint participation although state permitted insurance providers to withhold payment to

medical providers).

Courts in Minnesota have failed to find state action *even when* the public actor

specifically referred to the private actor as an "instrumentality" in written agreements.

*Rickmyer*, 995 F. Supp. 2d at 1020.  In *Rickmyer*, the court held that the mere fact that the

defendant City of Minneapolis treated neighborhood organizations as local government

instrumentalities for the ADA did not mean that these organizations constitute

government instrumentalities under federal law for purposes of a Section 1983 claim. *Id.*
The *Rickmyer* Court dismissed the federal claims against the private actor defendant
because plaintiff had made no "allegations to show that their private actions were taken
under color of state law." *Id.*

Like the plaintiff in *Rickmyer*, Plaintiffs have failed to allege facts that would
establish Alliance's private actions were taken under color of state law as joint
participants or conspirators with a state actor. The City plays no direct role in Alliance's
governance, and it merely reviews the bylaws for conformity with the CPP Guidelines.
Christ Aff. ¶ 48. No City representative sits on the Alliance Board. *Id.* ¶ 19. Alliance
serves in an advisory role on city issues and projects, but it is not a decision-maker. *Id.* ¶
12. Accordingly, Alliance is not a joint conspirator with the City and is not a state actor
under that test as well. For all these reasons, Alliance is not a state actor, and therefore
all Plaintiffs' constitutional claims must be dismissed.[7]

### c. *Plaintiffs' Claims Must Be Dismissed Pursuant to Rule 12(b)(6)*

Even if this Court finds Plaintiffs have standing and finds that Alliance is a state
actor, Plaintiffs' claims are facially deficient and must be dismissed on Rule 12(b)(6)
grounds for failure to state a claim.

To state a claim, "a plaintiff's obligation to provide the grounds of his entitlement
to relief requires more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

---

[7] As explained more fully in Section II(b)(iii), Alliance also does not provide public
services because it is not a state actor, and therefore Plaintiffs' MHRA claim should be
dismissed.

(2007) (internal quotation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. A plaintiff must assert facts that affirmatively and plausibly suggest that a plaintiff "has the right [it] claims… , rather than facts that are merely consistent with such a right." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (quotation omitted), *cert. denied*, 130 S.Ct. 628 (2009). In considering a motion pursuant to Rule 12(b)(6), the Court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *See Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995).

A complaint must offer more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that "naked assertions devoid of further factual enhancement" no longer suffice to state a claim. *Id.* (internal quotation omitted). Moreover, the facts actually pled must give rise to a plausible claim for relief. *See id.* "A district court, therefore, is not required 'to divine the litigant's intent and create claims that are not clearly raised,' and it need not 'conjure up unpled allegations' to save a complaint." *Gregory*, 565 F.3d at 473 (citing *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 840 (8th Cir. 2004).  While a court generally may not consider matters outside the pleadings in resolving a motion to dismiss, "documents necessarily embraced by the complaint are not matters outside the pleading[s]." *George v. Uponor Corp.*, 988 F.Supp.2d 1056, 1067 (D. Minn. 2013) (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)) (alterations in original).

Plaintiffs have failed to adequately plead a First Amendment claim.  While

Plaintiffs flatly allege Alliance has "deprived [them] of their rights to freedom of speech

and expression," they have pleaded no such facts.  Being removed from a ballot or being

denied to run in an election due to mandatory minimum requirements is <u>not</u> generally a

violation of the First Amendment.  *See, e.g.*, *N.Y. State Bd. of Elections .v Lopez Torres*,

552 U.S. 196, 198 (2008) (finding no violation of the First Amendment where State

required political parties to select judicial nominees for candidacy in the primary

election); *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 461 (2d Cir. 2006)

(affirming dismissal of First Amendment claims where candidate was removed from the

ballot for an open judicial seat).

Nor are the allegedly discriminatory Alliance bylaws violative of the First

Amendment.  Facial challenges to rules and statutes are generally disfavored because

they "'often rest on speculation . . . [and] raise the risk of 'premature interpretation of

statutes on the basis of factually barebones records.'"  *Phelps-Roper v. City of*

*Manchester*, 697 F.3d 678, 685 (8th Cir. 2012) (quoting *Wash. State Garage v. Wash.*

*State. Republican Party*, 552 U.S. 442, 450 (2008)).  To succeed on their claim, Plaintiffs

would need to demonstrate "that no set of circumstances exists under which [the

ordinance] would be valid." *Phelps-Roper*, 697 F.3d at 685 (quoting *United States v.*

*Stevens*, 559 U.S. 460, 472 (2010)).  Plaintiffs' facial challenge to Alliance's bylaws here

should be viewed with disfavor, and they have not pleaded or demonstrated any set of

circumstances under which the bylaws would be invalid, let alone the inverse.  For these

reasons, Plaintiffs have failed to adequately state a First Amendment claim, therefore warranting its dismissal.

Plaintiffs have also failed to sufficiently allege a Fourteenth Amendment equal protection claim.  Their allegations of discriminatory bylaws imposing requirements on would-be Alliance Board candidates are insufficient to establish a violation of the equal protection clause of the Fourteenth Amendment.  Compl. ¶ 16(c-d). "[N]ot all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or choose among candidates." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).  Courts first look to the extent and nature candidate restrictions have on voters. *See Clayton v. Kiffmeyer*, 688 N.W.2d 117, 129 (Minn. 2004) (citing numerous Supreme Court cases in support).  Secondly, courts look to the purposes served by the challenged statutory scheme. *Id.*

Plaintiffs' equal protection challenge to Alliance's bylaws must fail. Plaintiffs have identified no specific restrictions which would limit Alliance members' right to vote at all, nor have they alleged facts sufficient to demonstrate an improper purpose served by the bylaws.  Accordingly, their Fourteenth Amendment equal protection claim is also facially insufficient.

Even if this Court does decide to continue to exercise supplemental jurisdiction over the MHRA claims, Plaintiff's MHRA claims must be dismissed because they have failed to state a claim sufficient to survive Rule 12(b)(6).  "[A] showing of the fact of discrimination is the *sine qua non*." *Thomas v. City of St. Paul*, 526 F. Supp. 2d 959, 968 (D. Minn. 2007) *aff'd*, 321 F. App'x 541 (8th Cir. 2009).  To maintain an MHRA

discrimination claim, a plaintiff must establish a prima facie case of discrimination. *Id.* (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53 (1981)). Plaintiffs must also produce evidence of a discriminatory motive. *Thomas*, 526 F. Supp. 2d at 968 (citing *Sigurdson v. Isanti Cnty.,* 386 N.W.2d 715, 720 (Minn.1986)).  Under the MHRA, plaintiffs must demonstrate that they experienced treatment with respect to public services that was different than others similarly situated, or that their treatment was so different from the expected that discrimination is the probable explanation. *See City of Minneapolis v. Richardson,* 239 N.W.2d 197, 202 (Minn.1976); *Greiner v. City of Champlin,* 27 F.3d 1346, 1355 (8th Cir.1994); *Willis v. Centennial Mortg. & Funding, Inc.*, No. CIV.03-3641, 2004 WL 2075558, at *10 (D. Minn. Sept. 16, 2004).  Plaintiffs have made no such allegations here. Therefore, their MHRA claims must also fail.

Finally, Plaintiffs' claim for "Equity and Irreparable Injury" is not a recognized claim and must be dismissed.  A "claim for injunctive relief is a request for a remedy, not a separate cause of action." *Christensen v. PennyMac Loan Services, LLC*, 988 F. Supp. 2d 1036, 1046 (D. Minn. 2013); *Labrant v. Mortgage Elec. Registration Sys., Inc.*, 870 F. Supp. 2d 671, 684 (D. Minn. 2012); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008).  Accordingly, Plaintiffs' Fourth Count must be dismissed for failure to state a claim.

## III.    CONCLUSION

For the above-stated reasons, Alliance respectfully requests that the Court dismiss this action in its entirety with prejudice.  In addition, Alliance respectfully requests that this Court award its reasonable attorney's fees, costs, and disbursements pursuant to 42

U.S.C. § 1988, as well as such other and further relief that this Court may deem just, fair and equitable.

Dated: April 1, 2015                           Respectfully submitted,

                                               **GRAY, PLANT, MOOTY, MOOTY &
                                               BENNETT, P.A.**

                                                /s/ Matthew P. Webster
                                               Matthew P. Webster (#0392530)
                                               Samuel W. Diehl (#0388371)
                                               500 IDS Center
                                               80 S. Eighth Street
                                               Minneapolis, MN 55402
                                               Telephone: (612) 632-3381
                                               Facsimile: (612) 632-4381
                                               matthew.webster@gpmlaw.com
                                               samuel.diehl@gpmlaw.com

                                               **ATTORNEYS FOR DEFENDANT
                                               WHITTIER ALLIANCE**

GP:3952872 v7