UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Basim Sabri, Marty Schulenberg,
Mohamed Cali, Jay Webb, and
Zachary Metoyer,

                    Plaintiffs,

          v.

Whittier Alliance and the City of
Minneapolis,

                    Defendants.

_____

Case No. 15-cv-1578 (ADM/SER)


**DEFENDANT CITY OF
MINNEAPOLIS'S MEMORANDUM
OF LAW IN SUPPORT OF MOTION
TO DISMISS AND IN OPPOSITION
TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**

Defendant City of Minneapolis ("City") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss and in Opposition to Plaintiffs' Motion for Preliminary Injunction. Plaintiffs claim that their federal rights were violated because a private non-profit corporation, Whittier Alliance, allegedly enacted bylaws intended to improperly bar them from running in the 2015 election for the Whittier Alliance Board of Directors. None of the Plaintiffs, however, actually sought to be candidates in the 2015 election. Therefore, the Plaintiffs lack standing and have suffered no injury.

Nevertheless, in an attempt to pull the City into what would otherwise be a private dispute, Plaintiffs have misconstrued the workings of the City's Community Participation Program ("CPP") and its relationship with Whittier Alliance. Plaintiffs claim that the City provides funds directly to Whittier Alliance to administer government services and assisted in drafting objectionable bylaws for Whittier Alliance. To the contrary, although Whittier Alliance serves a valuable role as the voice of the Whittier neighborhood, it is

1

not given unrestricted access to City funds, does not provide services inherently deemed to be "government services," and is rarely responsible for directly administering the contracts needed to effectuate the plans and goals of the Whittier neighborhood. Additionally, the contested bylaws were drafted solely by Whittier Alliance. As such, none of the Plaintiffs' complaints involve state action. Therefore Plaintiffs' Complaint should be dismissed and their request for a preliminary injunction should be denied.

## FACTS

### A.    Facts alleged by Plaintiffs

### 1.    Plaintiffs' Complaint

The City's Neighborhood Revitalization Plan, later named Community Participation Program, administers government revitalization programs and funding through private neighborhood organizations. (Compl. (ECF Doc. No. 1) at ¶¶8-9). The City insists that the neighborhood organizations involved in this program be democratic in nature and open to all neighborhood residents. (*Id*. at ¶9). Whittier Alliance is the neighborhood organization for the Whittier neighborhood. (*Id*. at ¶11). The Board of Directors for Whittier Alliance is "virtually solely" caucasian, although half the population of the Whittier neighborhood consists of people of color, and the board has adopted policies designed to exclude racial and ethnic minorities. (*Id*. at ¶¶15-16). Specifically, the Board of Directors blocked Somali-American businesses from inclusion in Whittier Alliance's business registry, and interpreted or enacted bylaws intended to exclude racial minorities from being candidates for election to the Board of Directors. (*Id*. at ¶16). According to the Plaintiffs, the City of Minneapolis has either "deliberately

approved or, at least exceeded or acquiesced to" the discriminatory actions by Whittier Alliance.  (*Id*. at ¶17).

### 2.     Plaintiffs' Motion for Preliminary Injunction

The Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order alleges the following facts, without citations to any supporting record.  (*See* Pl. Mem. (ECF Doc. No. 3)). The City developed the Community Participation Plan ("CCP").  (*Id*. at p. 1).   Under this Plan, municipal services were to be implemented by the City through neighborhood organizations.  (*Id*.)   The neighborhood organizations would submit plans, the plans would be approved by the Minneapolis City Council, and the neighborhood organizations would receive public funds for administering governmental services. (*Id*.)

For the CPP, Whittier Alliance is the designated representative for the Whittier neighborhood.  (*Id*. at p. 2).  Nearly half of the population of the Whittier neighborhood consists of people of color, although the Whittier Alliance Board of Directors is virtually lily white.  (*Id*. at p. 3).  The Whittier Alliance deliberately adopted policies designed to exclude racial and ethnic minorities, including failing to permit Somali-American businesses from inclusion in Whittier Alliance's business registry, and interpreting or enacting bylaws intended to exclude racial minorities from being candidates for election to the Board of Directors.  (*Id*.)

The Plaintiffs grieved their exclusion from the 2014 Board of Directors election to the City through its CPP grievance procedure.  (*Id*.)   The City affirmed Whittier Alliance's discriminatory policies, but directed Whittier Alliance to rewrite its bylaws to

make explicit provisions for criteria to run for the Board of Directors. (*Id*.) The City assigned an employee to assist Whittier Alliance in writing those criteria. (*Id*.) The new criteria provided that each at-large director on the Board must be able to demonstrate current and ongoing participation with Whittier Alliance, and must not have committed an act of malice or defamation against Whittier Alliance or members of the Board of Directors or otherwise disrupted the aims or purposes of Whittier Alliance. (*Id*. at p. 4).

The Plaintiffs believe that the Board of Directors will determine if these new criteria apply to a candidate for election to the Board. (*Id*.) They also believe that these criteria are intended to keep the Plaintiffs and other opponents of the incumbent Board of Directors from being able to run for election. (*Id*.) The Plaintiffs have been open in their criticism of the policies and practices of the incumbent Board. (*Id*.) Plaintiff Zachary Metoyer indicates that the Plaintiffs did not seek to run for the Board because of the new criteria. (*Id*.)

## B.      The Community Participation Program gives residents a voice in the City's neighborhood revitalization efforts.

To encourage community engagement in the City of Minneapolis's efforts to revitalize local neighborhoods, the City developed the Community Participation Program ("Program") (*See generally* Sarff Aff. at Ex. 1; *see also* Rubedor Aff. at ¶2).[1] Through this Program, the City contracts with 70 neighborhood organizations to provide them with administrative funding, including funding to cover staff expenses, employee

---

[1] For ease of reference, "Sarff Aff." refers to the Affidavit of Kristin Sarff, "Rubedor Aff." refers to the Affidavit of David Rubedor, "Cooper Aff." refers to the Affidavit of Robert Cooper, "Thompson Aff." refers to the Affidavit of Robert Thompson, and "Chavez Aff." refers to the Affidavit of Michelle Chavez.

benefits, and supplies and materials. (*Id*. at pp. 18-19, 21). In turn, the neighborhood organizations hold neighborhood meetings and otherwise engage with members of the community to identify goals and priorities for neighborhood revitalization efforts. (*Id*. at pp. 1-3, 7-8 (explaining that neighborhood organizations must submit plans demonstrating community participation)). The neighborhood organizations convey these goals and priorities to the City, along with budget proposals, through Neighborhood Priority Plans or Neighborhood Action Plans ("Plans") (*Id*. at p. 10-11). The Plans must be approved by the City's Neighborhood and Community Relations Department ("NCR") and City Council. (*Id*. at p.11). The City effectuates the Plans, with funds that are dedicated to each particular neighborhood, by entering into separate contracts with various public and private agencies, such as the Minneapolis Police Department or the Minneapolis Park and Recreation Board and, in certain circumstances, the neighborhood organizations. (Rubedor Aff. at ¶3).

To be recognized as a neighborhood organization, multiple eligibility requirements must be met. (Sarff Aff., Ex. 1 at pp. 3-4). In particular, the neighborhood organizations must provide for the participation of all segments of the neighborhood, including, but not limited to, business owners, immigrants, non-English speakers, low-income residents and communities of color. (*Id.* at p. 3, ¶2). Neighborhood organizations must also hold regular open meetings and take positive steps to encourage all interested parties to attend and participate. (*Id*. at ¶4). Additionally, the neighborhood organizations must be incorporated and have adopted by-laws, a grievance procedure, and policies with respect

to Equal Opportunity Employment, Affirmative Action, and the Americans with Disabilities Act.  (*Id.* at ¶5).

To assist the neighborhood organizations with these requirements and other limited legal matters, the City contracts with a private law firm to provide two hours of free legal consultation to each neighborhood organization.  (Sarff Aff., Ex 3).  The City does not require neighborhood organizations to include any specific provisions in their bylaws.  (Rubedor Aff. at ¶9).  Indeed, a review of the bylaws from several neighborhood organizations reflects diversity in form and substance.  (Sarff Aff., Exs. 6, 7).  To maintain eligibility for funding, the neighborhood organization may not have bylaws that conflict with CPP guidelines. (Rubedor Aff. at ¶10).  Any review of the bylaws of a neighborhood organization is limited to determining whether the bylaws comply with CPP guidelines.  (*Id.* at ¶11).  If a conflict is identified between the bylaws and CPP guidelines, the City may recommend that the bylaws be revised to come into compliance with CPP guidelines or withdraw funding for the Plan.  (*Id.*)  The City does not propose bylaws, draft new bylaws, or review bylaws for any other purpose than to determine compliance with CPP guidelines. (*Id.* at ¶9).

## C.   <u>Whittier Alliance</u>

The Whittier Alliance is a nonprofit corporation.  (Sarff Aff., Ex. 4).  It has been recognized as the neighborhood organization representing the Whittier neighborhood in Minneapolis.  (Rubedor Aff. at ¶4).  The Whittier Alliance and the City have entered a funding agreement.  (Sarff Aff. at Ex. 2).  The agreement construes Whittier Alliance as a contractor.  (*Id.* at pp. 1, 3).  The current agreement provides $131,591 to Whittier

Alliance for various administrative costs in each year from 2014 to 2016.  (*Id.* at p. 16). Whittier Alliance is required to be a "democratically elected and representative group" and "make every effort to ensure that participation in all phases of its activities is inclusive of all members of the neighborhood and represents the diversity of that membership." (*Id*. at p. 9, ¶A.2.)

The Whittier Alliance submitted Neighborhood Action Plans to the City.  (*See* Sarff Aff., Ex. 5).  The Phase II Plan data and information was collected through a comprehensive outreach process involving 30 focus groups and 275 surveys conducted in English, Somali, and Spanish languages.  (*Id*. at pp. i, iii-iv).  The Plan addresses several goals pertaining to neighborhood housing, safety, youth, business and the local economy, and was unanimously approved in a neighborhood vote.  (*See id*. at p. i-ii).  Multiple "participants" are linked to the Plan's proposed projects or goals, including, but not limited to, the Minneapolis Community Land Trust, Minnesota Housing Finance Agency, U.S. Department of Housing and Urban Development, Minnesota Historical Society, Hennepin County Historical Society, United Way, What's Up Youth Line, Greater Minneapolis Day Care Association, community development corporations, private developers, lenders, construction companies, block clubs, and faith communities.  (*Id*. at p. 1-70).  Several entities, other than Whittier Alliance, are identified as potential "contract administrator[s]" for the contracts needed to execute the Plan, including the City's Development Finance Division ("DFD"), Community Planning and Economic Development ("CPED") Department, Police Department, Public Works Department, and the Minneapolis Parks and Recreation Board and Hennepin County.  (*Id*.)

**D.**    **Plaintiffs submitted a limited grievance to the City's NCR Department, and have never grieved the alleged exclusion of Somali-American businesses from the Whittier Alliance business registry or the recent modifications to Whittier Alliance's bylaws.**

The City developed a grievance procedure to address member complaints against neighborhood organizations.   (Sarff Aff., Ex. 1 at p. 12-13).   A grievance may be submitted if it is "within the jurisdiction of the City's community participation contract with the neighborhood organization" and it relates to the "process used by the neighborhood organization (but not about decisions or outcomes)."   (*Id*. at p. 11). The member must first formally and timely bring the grieved issue to the attention of the neighborhood organization.   (*Id*. at p. 12).    Once the grievance has been addressed through the neighborhood organization's grievance procedure, or if the neighborhood organization has failed to timely address the grievance, a written grievance may then be made to the NCR Department.   (*Id.* at pp. 12-13).   The NCR Department will investigate the grievance and make findings and recommendations, and then the NCR Director will issue a formal response.   (*Id*. at p. 13).   If the grievant is unsatisfied with the NCR Director's response, the grievant may appeal to the Neighborhood and Community Engagement Commission.   (*Id*. at p. 13).

Plaintiffs allege that they were all denied the right to run for Whittier Alliance's Board of Directors in 2014.   (ECF Doc. No. 3 at 3).   Four of the five Plaintiffs were not allowed to participate in the 2014 election because their candidate applications failed to demonstrate any past participation ("Participation Requirement") with the Whittier Alliance.   (*See* Metoyer Aff. (ECF Doc. No. 4) at p. 4, ¶¶22, 25 (acknowledging that

Plaintiff Metoyer sought to run for the 2014 Board of Directors); ECF Doc No, 4-1 (showing that only four of the Plaintiffs were denied participation in the election)).   The Plaintiffs grieved the rejection of the four applications, claiming that Whittier Alliance was not authorized to impose the Participation Requirement for candidate eligibility. (ECF Doc. No. 4-1 at pp. 14-16).

Whittier Alliance sought legal counsel from a private law firm regarding its ability to impose certain eligibility requirements on candidates of the neighborhood organization's Board of Directors.  (Cooper Aff., Ex. 1). Whittier Alliance subsequently denied the Plaintiffs' grievance.  (ECF Doc. No. 4-1 at p. 17 (labeled Exhibit D)).

The Plaintiffs grieved Whittier Alliance's determination to the City.   The Minneapolis Finance and Property Services Department issued findings regarding the grievance, noting that, for at least three years, the Board of Directors Candidate Registration Form required potential candidates to certify that they had "participated in Whittier committees or volunteered for neighborhood activities on a regular basis" and that this requirement had previously been used to deny candidacy.  (ECF Doc. No. 4-1 at p. 23; *see also* Cooper Aff., Ex. 2).  The findings concluded that there was no violation of the CPP guidelines, but recommended that Whittier Alliance's bylaws be revised to be more explicit on its election process and the qualifications for board candidacy.  (ECF Doc. No. 4-1 at pp. 23, 25).  Then, the Director of NCR reviewed the grievance. (*Id*. at p. 20).   It was determined that Whittier Alliance did not violate their bylaws or CPP guidelines.  (*Id*.) The Director informed the Plaintiffs that if they were unsatisfied with his findings, they could file an appeal to the Neighborhood and Community Engagement

Commission within 30 days of the December 18, 2014 response.  (*Id*.)  The Plaintiffs did not appeal to the Neighborhood and Community Engagement Commission.  (Rubedor Aff. at ¶5).

The Director's response notes that a Neighborhood Support Specialist had been assigned to work with Whittier Alliance to update their bylaws.  (ECF Doc. No. 4-1 at p. 23).  A Neighborhood Support Specialist and the Neighborhood Support Manager reviewed the bylaws only to ensure that the bylaws complied with CPP guidelines. (Thompson Aff. at ¶2; Chavez Aff. at ¶2).  Neither the Specialist nor the Manager drafted the amendments, proposed the amendments, or otherwise approved of the amended language. (Thompson Aff. at ¶3; Chavez Aff. at ¶3).

The Plaintiffs further allege that Somali-American businesses have been excluded from gaining membership in the Whittier Alliance and registering in Whittier Alliance's Business Directory. This allegation has never been the subject of a grievance to the City's NCR Department.   (Rubedor Aff. at  ¶6).    Additionally,  the CPP does not require neighborhood organizations to maintain a business directory.  (*Id*. at ¶7).

Plaintiffs also allege that a recent addition to Whittier Alliance's bylaws, which states that at-large Board of Directors must not have committed an act of malice or defamation against Whittier Alliance or members of the Board of Directors or otherwise disrupted the aims or purposes of Whittier Alliance ("Anti-Defamation Provision"), was intended to exclude them from running for the Board of Directors in 2015 and beyond. This allegation has never been the subject of a grievance to the City's NCR Department. (*Id*. at ¶8).  Additionally, none of the Plaintiffs submitted an application to run for the

Board of Directors in 2015, and NCR is not aware of any other member being denied the right to be a candidate for the 2015 Board of Director's election.  (*Id*. at ¶12).

## LEGAL ARGUMENT[2]

### A.   Motion to Dismiss

### 1.   Plaintiffs lack standing to bring suit before this Federal Court.

A motion to dismiss a complaint for lack of subject matter jurisdiction is governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure.  A motion to dismiss for lack of subject matter jurisdiction may challenge the complaint either on its face or on the factual truthfulness of its averments. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993); *Osborn v. United States*, 918 F.2d 724, 729 n. 6 (8th Cir. 1990). ""A court may exercise jurisdiction only if a plaintiff has standing to sue on the date it files suit." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1364 (Fed. Cir. 2010).  Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III" of the U.S. Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted). "The party invoking federal jurisdiction bears the burden of establishing [standing]." *Id.* at 561 (1992) (citation omitted). Subject matter jurisdiction is a question of law. *DDB Technologies, L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284 (Fed. Cir. 2008).

To meet the constitutional minimum of standing, a plaintiff must establish "that he or she has suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or

---

[2] The City of Minneapolis hereby adopts all of the arguments of the Defendant Whittier Alliance in this case as if fully set forth herein.

imminent, not conjectural or hypothetical'; that there is 'a causal connection between the injury and the conduct complained of'; and that it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Constitution Party v. Nelson*, 639 F.3d 417, 420 (8th Cir. 2011) (quoting *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130).

Courts have routinely found that if a plaintiff is required to meet a precondition or follow a certain procedure to engage in an activity or enjoy a benefit and fails to attempt to do so, that plaintiff lacks standing to sue because he or she should have at least taken steps to attempt to satisfy the precondition.  For example, in *Moose Lodge No. 107 v. Irvis*, the Court held that the plaintiff had no standing to challenge a club's racially discriminatory membership policies because he had never applied for membership. 407 U.S. 163, 166-167, 92 S.Ct. 1965, 1968-1969 (1972).  Likewise, in *T.L.J. v. Webster*, the Eighth Circuit held that the plaintiffs lacked standing to challenge procedures to obtain a bypass to a required parental consent for an abortion when they had never attempted to obtain the judicial bypass. 792 F.2d 734, 739 n. 5, 740 (8th Cir. 1986).

Even where a precondition is not present, plaintiffs are deemed to lack standing where they merely speculate about the possibility of being injured.  For example, in the case of *County of Mille Lacs et al., v. Benjamin*, the Court found that the plaintiffs lacked standing, noting that their primary claim arose out of a threatened regulation by Mille Lacs Band ordinances and, consequently, their claimed injury was not "actual, concrete, or imminent."  262 F. Supp. 2d 990, 995 (D. Minn. 2003) *aff'd*, 361 F.3d 460 (8th Cir. 2004).

12

Based on this case law, Plaintiffs have not met their burden of establishing standing.  Plaintiffs' alleged injury relates to the adoption of  bylaws supposedly intended to block them or other ethnic or racial minorities from being candidates in the election for Whittier Alliance's Board of Directors.[3]  The Plaintiffs, however, do not allege that they applied to be candidates for the 2015 election and were subsequently denied the opportunity by Whittier Alliance.  Plaintiffs did not fulfill the precondition of seeking candidacy and proving exclusion from the election and they are, therefore, legally unable to establish an actual and concrete injury. The Plaintiffs lack standing on this basis alone.  Additionally, Plaintiffs do not allege that anyone, of any race or ethnicity, applied to be a candidate in the 2015 election and were excluded from the election.

Plaintiffs' allegations amount to no more than speculative or imaginary wrongs. They have not demonstrated a realistic danger that any of the bylaws will be selectively enforced against them.  With respect to the Participation Requirement, Plaintiffs do not allege that they had a history of participation with Whittier Alliance when four of their applications for candidacy were rejected.  Additionally, the Plaintiffs do not allege that the Participation Requirement was selectively enforced against them. The record shows that the Participation Requirement had been used to deny candidacy for other applicants

---

[3] Plaintiffs also allege that Whittier Alliance has not allowed Somali businesses to register for the Whittier business directory.  Plaintiffs do not allege that the City of Minneapolis is involved in this alleged practice.  After all, the CPP does not even require a neighborhood organization to maintain a business directory.  With respect to standing, the Plaintiffs do not allege that they have personally been blocked from registering businesses they own, if any.

before the 2014 election.   Moreover, the Plaintiffs do not allege that they currently lack the ability to establish participation with Whittier Alliance and, therefore, have a good faith basis that they will be rejected on the Participation Requirement in future elections. Admittedly, Plaintiff Metoyer has already served on the Board of Directors once and, when he applied for the 2014 election, was not denied the right to be a candidate.

With respect to the Anti-Defamation Provision, Plaintiffs do not allege that they have acted with malice, defamed any members of the Board, or acted to disrupt the aims and purposes of the Whittier Alliance.   Nor do they allege that anyone responsible for evaluating applications for candidacy to the Whittier Alliance Board of Directors identifies the Plaintiffs as being in violation of the Anti-Defamation Provision.   Indeed, the Complaint asserts no facts from which this Court could reasonably infer that the Anti-Defamation Provision would be applied to the Plaintiffs.   The Plaintiffs merely allege – in their memorandum in support of the motion for preliminary injunction, not the Complaint – that they have been critical of certain members of Whittier Alliance.   It is pure speculation, however, to predict that the Plaintiffs would be rejected from candidacy in future Whittier Alliance elections, based on this past criticism, particularly since the makeup of the Board of Directors changed in the election last week.

Plaintiffs have not suffered an actual or concrete injury.   As such, the Complaint should be dismissed because the Plaintiffs lack standing.

**2.      The Plaintiffs' claims fail as a matter of law.**

A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure.   On a Rule 12(b)(6) motion to dismiss, a complaint

must allege a set of historical facts which, if proven true, would entitle the plaintiff to some legal redress against the named defendant under some established legal theory. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement'." *Iqbal*, 556 U.S. at 678.

Under *Bell Atl. Corp. v. Twombly*, a plaintiff must plead facts sufficient to "raise a right to relief above the speculative level." 550 U.S. 544, 545 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A complaint cannot simply "leave open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 562. Rather, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Id.* at 570. Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

Plaintiffs fail to state a claim because the Complaint does not identify any state action. To establish a cause of action under 42 U.S.C. § 1983,[4] the Plaintiffs must establish: (1) that they have been deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law. *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 155-156, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978).

The test of whether a private citizen's actions constitute "state action" is whether the private citizen's actions can be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1981). In *Lugar*, the Supreme Court summarized a two-part definition of the phrase "fairly attributable to the State." "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id*. "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id*.

a.  The alleged deprivation was not caused by any right or privilege created by the City or by a rule of conduct imposed by the City.

The alleged deprivations are not attributable to the exercise of any right, privilege or rule of conduct created or imposed by the City.  Plaintiffs assert that their federal rights were violated because Whittier Alliance allegedly blocked Somali-American

---

[4] Plaintiffs' Complaint also asserts a cause of action under Minn. Stat. § 363A.17(3), however, as alleged, the claim assumes the existence of state action.

businesses from inclusion in its business registry,[5] and Whittier Alliance interpreted or enacted bylaws allegedly intended to exclude racial minorities from being candidates for Whittier Alliance's Board of Directors, with assistance from the City.

First, the Plaintiffs do not allege that the City has any involvement with Whittier Alliance's business registry. Indeed, the Complaint is silent in this respect. The City did not create the business registry and a business registry is not required for a neighborhood organization to participate in the CPP. Additionally, the City is not involved in establishing any prerequisites for the inclusion of businesses in the Whittier Alliance business registry. As such, the Plaintiffs do not plausibly assert a cause of action against the City on this basis.

Second, the Plaintiffs do not allege the existence of any right, privilege or rule of conduct created or imposed by the City in relation to Whittier Alliance's bylaws. The Plaintiffs' Complaint contains the conclusory statement that the City "approved or, at least exceeded or acquiesced to" the discriminatory practices of Whittier Alliance. No specific, supporting facts are offered. On a motion to dismiss, these conclusory, naked assertions are insufficient to state a claim and withstand the pleading requirements dictated in *Iqbal* and *Twombly.*

Even looking outside the four corners of the Complaint would not revive the Plaintiffs' claims. A review of Plaintiffs' memorandum in support of their motion for

---

[5] The Plaintiffs' allegations are based on Plaintiff Metoyer's allegation that businesses seeking to be included in the Whittier Alliance business registry are required to show appropriate forms of identification or proof. They do not cite to any case law to suggest that such a requirement is unlawful. *See* Minn. Stat. § 317A.441, subd. (a)(2)(describing that proof of membership may be made by proof of ownership or a lease of a business).

preliminary injunction offers insufficient backing, alleging that the City affirmed discriminatory practices relating to the Participation Requirement and a CPP employee assisted in writing revised bylaws, presumably inferring a connection to the Anti-Defamation Provision.  Neither assertion is accurate or supported by sufficient factual allegations to withstand this motion to dismiss.

With respect to the Participation Requirement, the Plaintiffs do not sufficiently plead City involvement or discriminatory conduct.  The City did not draft the bylaw provision.  When the Plaintiffs grieved the Participation Requirement, the City found that the provision did not violate CPP guidelines.  Plaintiffs do not allege any facts to dispute this finding.  Plaintiffs also do not allege that reviewing bylaws for compliance with CPP guidelines is discriminatory.  After all, the sole scope of review utilized when the City evaluates a neighborhood organization's bylaws is whether they comply with CPP guidelines.  To claim otherwise is to impose a duty of review on the City that is not required and is contrary to autonomous nature of neighborhood organizations, which are independently governed.  This does not amount to acquiescence or approval by the City.

Additionally, Plaintiffs do not cite to any case law or legal principle suggesting that imposing minimum qualifications for a Board of Directors, such as the Participation Requirement, amounts to discrimination.  To the contrary, bylaws may establish the qualifications for a Board of Directors.  *See* Minn. Stat. §317A.181, subd. 1 ("Bylaws may contain any provision relating to the management or regulation of the affairs of the corporation consistent with law or the articles, including but not limited to . . . the qualifications . . . of directors").  Although Plaintiffs suggest in their motion for

preliminary injunction that the Participation Requirement was applied to Plaintiffs because they are ethnic and racial minorities, they do not allege any facts to contest that the Participation Requirement validly applied to them, *i.e.* Plaintiffs do not allege any actual participation with Whittier Alliance prior to their candidate applications in 2014. Additionally, Plaintiffs do not allege that the Participation Requirement was selectively used against them.  After all, the record demonstrates that the Participation Requirement had previously been used to deny other applications for candidacy prior to the 2014 election and the rejection of Plaintiffs' applications.

Federal Rule of Civil Procedure 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citations omitted).  Plaintiffs have failed to meet this standard.

With respect to the Anti-Defamation Provision, Plaintiffs' Complaint does not offer any specific factual allegations to support its conclusion that the City "approved, exceeded or acquiesced" to discriminatory practices.   No specific, supporting facts are offered.  On a motion to dismiss, these conclusory allegations are insufficient to state a claim.

Even the Plaintiffs' submissions in support of their motion for preliminary injunction fail to provide sufficient factual support.  There, the Plaintiffs state that the City assisted in rewriting Whittier Alliance's bylaws.  The documents submitted with Plaintiff  Metoyer's affidavit, however, reveal that a Neighborhood Support Specialist had merely been assigned to assist Whittier Alliance in "updating" their bylaws. Assisting in updating bylaws, however, is not equivalent to assisting in rewriting.  Rather,

the record reveals that the Neighborhood Support Specialist reviewed Whittier Alliance's bylaws only for compliance with CPP guidelines.  It is not disputed that the CPP guidelines require inclusion.  Such a scope of review does not amount to discriminatory approval or acquiescence.  Again, the City did not propose bylaws, draft new bylaws, or review bylaws for any other purpose than to determine compliance with CPP guidelines.

Additionally, Plaintiffs have not pled any facts sufficient to show selective enforcement of the Anti-Defamation provision.  They do not allege that they applied to be candidates for the 2015 election and were rejected on the basis of the Anti-Defamation provision.  They do not allege that any candidates were rejected as candidates on the basis of that provision.  The purported harm is purely speculative. As such, Plaintiffs have not met their burden of pleading.

b. <u>Whittier Alliance cannot fairly be said to be a state actor.</u>

The Plaintiffs have not sufficiently pled facts to establish that Whittier Alliance is a state actor.   Plaintiffs claim that state action can be found under four "tests" – the "symbiotic relationship test," "command and encouragement test," "joint participation" doctrine, and "public function" test.  The case law cited by Plaintiffs does not announce four bright line tests, but rather examines various and overlapping considerations that influence whether a court will find state action.  The facts in this case do not evidence state action under any of the so-called tests offered by Plaintiffs.

####### i.    *Symbiotic Relationship*

The so-called "symbiotic relationship" test does not establish state action in this case.   Plaintiffs' sole citation to *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961) is unavailing, particularly since the Supreme Court limited its holding to cases where the private entity was in a lessee relationship with a state actor.   In *Burton*, the Wilmington Parking Authority operated and maintained a public facility, part of which was leased to a private party for the purpose of operating a restaurant that refused to serve black people. (*Id*.)   The Supreme Court focused on the lease relationship between the parking authority and the restaurant, specifically: the restaurant was located in a publicly owned and operated facility built on land condemned by the state for public use, the upkeep and maintenance of the building were responsibilities of the parking authority and were to be paid by public funds, under the terms of the lease the state was to provide all utilities, and the restaurant was an integral part of the parking authority's plan to operate a self-sustaining project. *See* 365 U.S. 722-24, 81 S.Ct. 860-61.   In addition, the parking authority and the restaurant in *Burton* mutually profited from one another and the discriminatory acts of the restaurant.   After all, it was agreed that serving black people in that community would have adversely affected the profitability of the restaurant's business. From these facts, the mutually beneficial relationship, and the public ownership of the facility, the Court concluded that the "State has so far insinuated itself into a position of interdependence with [the restaurant] that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to

have been so 'purely private' as to fall without the scope of the Fourteenth Amendment."
365 U.S. 725, 81 S.Ct. 862.

The predominant considerations in *Burton* are not applicable in this case.  Whittier
Alliance does not lease public property from the City for its operations.  The City is not
alleged to have benefited or profited in any way from Whittier Alliance's purportedly
discriminatory use of its business registry or bylaws.  Indeed, the allegedly discriminatory
conduct does not confer any benefit upon the City, financial or otherwise. Unlike *Burton*,
any benefits that are mutually conferred upon Whittier Alliance and the City are wholly
unrelated to the conduct alleged to be discriminatory.  After all, the Plaintiffs do not
allege that CPP or the effectuation of the Neighborhood Action Plan is discriminatory.

The Plaintiffs merely contend that the so-called "symbiotic relationship" test is
satisfied because the City provides money to Whittier Alliance and Whittier Alliance
performs governmental functions[6] and, as such, the City and Whittier Alliance serve each
other's needs. Such claims are insufficient to establish state action, particularly given the
significant, and interdependent, relationship demonstrated in *Burton.*

Plaintiffs either misunderstand or misconstrue how the City expends neighborhood
revitalization funds.  Whittier Alliance currently receives $131,591 in annual funding to
cover various administrative costs, not Plan implementation money.  In effectuating the
neighborhood Plan, the City enters separate contracts with various vendors and contract
administrators.  Over the last 24 years, a total of $11,358,989 has been allocated to the

---

[6] For the reasons stated below, Whittier Alliance does not perform governmental
functions traditionally deemed to be City services.

Whittier neighborhood through the Neighborhood Revitalization Program (1991-2010) and the Community Participation Program (2011-present). (Thompson Aff. at ¶4).   Out of that amount, $7,361,247 has been administered through contracts with vendors other than Whittier Alliance.  (*See id.*)

Although Whittier Alliance served as the vendor for certain contracts, it would be inimical to justice to construe them as a state actor.  Characterizing Whittier Alliance as a state actor because they were selected to administer certain contracts essentially means that the City cannot enter into contracts without transforming the independent contractor into a state actor. Indeed, any party that entered a contract with the City would constitute a state actor, including the Center for Energy and Environment, Franklin National Bank, and Loring Nicollet-Bethlehem Community Center, Inc., all of whom served as vendors for the City on Whittier neighborhood projects.  This conclusion is not supported by *Burton. See also Rendell-Baker*, 457 U.S. at 838–41, 102 S.Ct. at 2769–71 (pointing out that regulation and subsidization of an entity, without more, do not create state action).

ii.   *Command and Encouragement*

The so-called "command and encouragement test" does not establish state action here.  The Plaintiffs citation to *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 92 S.Ct. 1965, 32 L. Ed. 2d 627 (1972), confirms that state action is not present in this case.  In *Moose Lodge*, the Court explained that where the "impetus for discrimination is private, the state must have 'significantly involved itself with invidious discrimination,' in order for the discriminatory action to fall within the ambit of constitutional prohibition."  407 U.S. at 173 (internal citation omitted).   The only case cited by Plaintiffs where state

23

action was presumably found to exist appears to have relied on the conclusion that the regulatory agency "approved the [discriminatory] practice of the regulated entity." (Pl. Mem. at p. 9 (quoting *Moose Lodge*)).

Here, there is no "significant involvement" in or "approval" of invidious discrimination by the City.  Without explanation, Plaintiffs contend that the City gave explicit approval to Whittier Alliance's allegedly discriminatory practices relating to the exclusion of Plaintiffs as candidates for the 2014 election and for participating with Whittier Alliance in creating contested bylaws.  These assertions are not supported by the record.  As noted above, Plaintiffs do not allege any specific facts to support the conclusion that their exclusion from the 2014 election was improper – they do not assert that they had met the minimum qualification of having previously participated in Whittier Alliance activities and they do not assert that the qualification was used only to bar their applications for candidacy – or, that the City's involvement extended beyond merely determining whether Whittier Alliance's bylaws comply with CPP guidelines.  As noted above, the City's review of the bylaws was limited to assessing compliance with CPP guidelines.  At most, the City's involvement falls loosely within the type of regulation, which, standing alone, does not evidence state action.

### iii.    Joint Participation

In order to succeed under the joint participation doctrine, Plaintiffs must plead facts that show that the defendant and a state actor reached a mutual understanding or meeting of the minds to deprive the plaintiffs of their constitutional rights. *See, e.g., Miller v. Compton,* 122 F.3d 1094, 1098 (8th Cir. 1997) ("[A] private actor[ ] may be

liable under § 1983 only if she is a willing participant in joint action with the State or its agents. In construing that test in terms of the allegations necessary to survive a motion to dismiss, this circuit has held that a plaintiff seeking to hold a private party liable under § 1983 must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor.") (citations omitted).  Indeed, Plaintiffs cite to *Lugar* as finding joint participation where a conspiracy was alleged.

In only one line of analysis, Plaintiffs state "it is clear that the parties jointly participate in administering City programs, including the process for election and governance."  The joint participation doctrine, however, requires a joint participation in the alleged discrimination, not merely joint participation in a program such as the CPP. The Plaintiffs have not alleged that the City and Whittier Alliance had a mutual understanding or a meeting of the minds that enacting new bylaws would work to exclude the Plaintiffs from seeking election to the Whittier Alliance Board of Directors.  As noted by Plaintiffs, the CPP guidelines require a neighborhood organization to provide for the participation of all segments of the neighborhood.  It is within this framework that the City reviews bylaws for compliance with CPP guidelines, negating any mutual understanding that the bylaws would be applied as an exclusionary device.

### iv.   Public Function

The mere "fact '[t]hat a private entity performs a function which serves the public does not make its acts [governmental] action.'" *San Francisco Arts & Athletics v. United States Olympic Comm.*, 483 U.S. 522, 544, 107 S.Ct. 2971, 2985, 97 L.Ed.2d 427 (1987) (quoting *Rendell-Baker*, 457 U.S. at 842, 102 S.Ct. at 2772).   The public function

doctrine holds that state action is "present in the exercise by a private entity of powers traditionally exclusively reserved to the State." *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974) (citations omitted). The Supreme Court has held the following functions are exclusively reserved to the State: "the administration of elections; the operation of a company town; eminent domain; peremptory challenges in jury selection; and, in at least limited circumstances, the operation of a municipal park." *United Auto Workers, Local No. 5285 v. Gaston Festivals, Inc.*, 43 F.3d 902, 907 (4th Cir.1995) (citations omitted). The Supreme Court has further held that the following functions are not exclusively reserved to the state: "the provision of electricity and other utilities; the operation of nursing homes; ... the coordination and governance of college and amateur athletics," and the provision of schooling. *Id.* (citations omitted).

Plaintiffs offer the conclusory statement that "Whittier Alliance, in conjunction with the City, plainly performs the City's traditional public functions." There is no record or legal support for this assertion. Plaintiffs claim that neighborhood organizations implement municipal services such as housing assistance, public safety, and youth development. Again, the actual provision of services to accomplish a neighborhood organization's Plan is accomplished through City and vendor contracts, not directly implemented by the neighborhood organizations absent a contract. Additionally, the services provided under these contracts are not within the category of services traditionally and exclusively reserved for the City. They are not akin to eminent domain, for example. Indeed, a review of the vendors that contracted with the City to effectuate the Whittier neighborhood Plan shows a number of private entities that have

26

historically rendered the type of services that Plaintiffs claim are "government services," including, but not limited to, the Southside Neighborhood Housing Services and Project for Pride in Living.  Plaintiffs have not established that Whittier Alliance functions as a state actor.

**B.**    **Plaintiffs' Motion for Preliminary Injunction Fails**

When a plaintiff seeks injunctive relief, the plaintiff must demonstrate a "real and immediate threat of future injury by the defendant." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *see also O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). A plaintiff's speculation that a future injury may occur is not sufficient to warrant injunctive relief. *Lyons*, 461 U.S. at 103.  In sum, to establish standing for injunctive relief, a plaintiff must first demonstrate that he will suffer an injury in fact which is: 1) concrete and particularized and 2) actual or imminent, not conjectural or hypothetical. *David Eckles v. City of Corydon*, 341 F. 3d 762 (8th Cir. 2003).  As noted above in Section A.1, the Plaintiffs have not established a concrete and particularized injury, but rather assert a speculative, threatened harm.  As such, the Plaintiffs request for injunctive relief fails.

The factors to be considered in the decision to grant or deny a preliminary injunction are set forth by the Eighth Circuit in *Dataphase Systems Inc. v. C.L. Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981). *Dataphase* requires the Court to analyze: (1) the movant's success on the merits; (2) the threat of irreparable harm to the movant if the preliminary injunction is denied; (3) the balance between this harm and the harm the preliminary injunction, if granted, would cause to the other party; and (4) the public

interest in granting or denying the preliminary injunction. No one of the above factors determines whether a preliminary injunction should issue. *Id*. at 113. Rather, the equities must be balanced to achieve a just determination. *Id*. at 113, 114. The plaintiff bears the burden of proof on all four factors. *See Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987). A preliminary injunction is a "drastic and extraordinary remedy" and is "not to be routinely granted." *Cargo Protectors, Inc. v. American Lock Co.*, 92 F.Supp.2d 926, 929 (D. Minn. 2000) (citing *Intel Corp. v. ULSI System Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993)).

### 1.      Plaintiffs cannot succeed on the merits

Plaintiffs' probability of success on the merits at trial depends on their ability to prove that state action caused an injury. For the reasons stated above, the Plaintiffs cannot establish the existence of state action.

### 2.  The Plaintiffs will not be harmed if the preliminary injunction is denied

Plaintiffs' first amendment rights will not be harmed if the injunction is denied. Plaintiffs claim that Whittier Alliance's bylaws harm their first amendment rights. This argument is erroneously premised on the notion that the bylaws improperly precluded Plaintiffs from running for election in the recent Board of Director's election. With respect to the Participation Requirement, as noted above, it is permissible to impose minimum qualifications for a Board of Directors. With respect to the Anti-Defamation Provision, Plaintiffs do not have an interest in defamatory speech. *See Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974) (explaining that the first amendment does not absolutely protect defamatory speech). Additionally,

the limitation on disruptive conduct is not facially discriminatory as it does not apply to specific speakers or subject matters, making Plaintiffs' challenge to the bylaws an as-applied challenge.   Since Whittier Alliance has not invoked the Anti-Defamation provision to bar any applications for candidacy – Plaintiffs or otherwise – no alleged harm has occurred.

### 3.  Harm caused by the granting of the preliminary injunction

Granting the preliminary injunction will likely disrupt the operations of Whittier Alliance.  As noted during the telephonic conference on the Plaintiffs' TRO motion, the process of conducting an election involves hundreds of people and requires advanced notice for a variety of purposes.  It is possible that people who voted in the initial election will not be able to attend another election, nullifying their earlier democratic participation.  Additionally, the injunctive relief requested would likely stymie Whittier Alliance's ongoing efforts to serve as the voice of the Whittier neighborhood.

### 4.  Public interest is best served by denying the preliminary injunction

For the reasons stated above, the public interest is best served by denying the preliminary injunction.

## **CONCLUSION**

For the reasons stated above, the City of Minneapolis respectfully requests that the

Court grant its Motion to Dismiss and deny Plaintiffs' Motion for Preliminary Injunction.


Dated: <u>April 1, 2015</u>                             SUSAN L. SEGAL
                                                  City Attorney
                                                  By
                                                  */s/ Kristin R. Sarff*
                                                  KRISTIN R. SARFF (0388003)
                                                  Assistant City Attorney
                                                  Minneapolis City Attorney's Office
                                                  350 South 5th Street, Room 210
                                                  Minneapolis, MN  55415
                                                  (612) 673-3919

                                                  *Attorney for Defendant City of Minneapolis*