UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Basim Sabri, Marty Schulenberg, Mohamed Cali, Jay Webb, and Zachary Metoyer,<br><br>        Plaintiffs,<br><br>vs.<br><br>Whittier Alliance, a Minnesota not-for-profit, corporation, and City of Minneapolis, a municipal corporation,<br><br>        Defendants. | Court File No.: 15-cv-01578 ADM/SER<br><br><br>**DEFENDANT WHITTIER ALLIANCE'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiffs'[1] Opposition Memorandum fails to demonstrate any legal basis to deny Alliance's Motion to Dismiss Plaintiffs' Complaint with prejudice. It is apparent that Plaintiffs ask this Court to rewrite a private nonprofit organization's bylaws, to second-guess a nonprofit's interpretations of its own internal policies, and to somehow judicially add Plaintiffs to a ballot for a private board election for which Plaintiffs did not apply for candidacy or even attend. Plaintiffs have apparently conceded that their claims are facially deficient and warrant dismissal on Rule 12(b)(6) grounds, because they failed to oppose Alliance's Motion on those grounds. Plaintiffs similarly fail to address, and therefore concede, that they lack standing to bring their MHRA claim, that their claim for "Equity and Irreparable Injury" is not a valid claim, and that the only factual allegations

---

[1] Alliance will utilize the abbreviations from its opening brief. Alliance's opening brief in support of its motion will be referred to herein as "**Def. Mem.**" Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment will be referred to as "**Opp'n Mem.**"

1

upon which their claims rest are the 2015 candidacy bylaw provisions which Alliance, as a nonprofit, is legally permitted to create and interpret pursuant to Minnesota Statute Section 317A.181, subd. 1.

Plaintiffs' minimal factual allegations are insufficient to establish that they have standing to bring their current claims, and Plaintiffs have provided nothing more than unsupported legal conclusions to support their allegation that Alliance is a state actor.[2] Strikingly, Plaintiffs have failed to address and provided no legal basis for this Court to ignore Judge Susan Richard Nelson's decision in this district court addressing the identical issues before the this Court and finding that neighborhood organizations are ***not*** state actors. *See Rickmyer v. Browne*, 995 F. Supp. 2d 989, 1020 (D. Minn. 2014) (dismissing all federal claims against a non-profit neighborhood organization operating under the City of Minneapolis guidelines because the organization was not a state actor acting under color of state law). For all these reasons, it is appropriate to dismiss with prejudice Plaintiffs' Complaint in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and to deny Plaintiffs' Motion for Preliminary Injunction.

---

[2] In addition to this Memorandum, Alliance joins the City's arguments set forth in its memoranda to the extent applicable, including its arguments that Plaintiffs failed to exhaust their administrative remedies.

## I. FACTUAL BACKGROUND

Although Plaintiffs' Opposition Memorandum includes several affidavits and allegations attempting to smear Alliance with innuendo and implications, the facts material to the legal issues before the Court remain undisputed.[3]

Plaintiffs do not dispute or contradict that Alliance is not a department or entity of the City of Minneapolis; rather, it is a private 501(c)(3) nonprofit organization. Christ Aff. ¶¶ 3-4, 15; Christ Aff. Ex. 1 ("Alliance Articles"). Alliance pays no rent or funds to the City, and it does not lease property from the City. Christ Aff. ¶¶ 13-14. Alliance acts and carries out its functions independently and without any involvement or approval of the City, including:

- Creating and maintaining a business directory to showcase local businesses, *id.* at ¶¶ 18, 47;

- Drafting its Articles of Incorporation in 1977, decades before the City became involved in funding through the Neighborhood Revitalization Program ("NRP") in 1990 and which later became the Community Participation Program ("CPP"), *id.* Ex. 1;

- Holding monthly community meetings and its Annual Meeting, Christ Aff. ¶ 9;

- Holding elections for Board of Director positions, *id.* at ¶ 47

- Hosting community events and activities, *id.* at ¶ 9;

---

[3] While Alliance disputes many of the factual allegations set forth in the affidavits submitted with Plaintiffs' Opposition Memorandum, it is not submitting additional affidavits at this time because those facts are immaterial to the legal questions before this Court on Alliance's Motion to Dismiss and Plaintiffs' Motion for Preliminary Injunction.

- Presenting forums and seminars to educate the Whittier community about civic engagement and influence, *id.*;
- Hosting and supporting neighborhood events such as Youth Field Day, May Day Soiree, Art in the Park, summer potlucks, the Clinton field Ice Cream Social, and Shop Karmel, *Id.* at ¶ 11, *id.* Ex. 3 ("2013 Alliance Annual Report") at 28-29;

As a small nonprofit with only two full-time employees, Alliance "does not have the capacity to provide direct social, housing or educational services." *Id.* Ex. 2 ("2013 NRP Agreement") at 22. City involvement in Alliance's activities are minimal and include reviewing Alliance's annual budget for its expenditure of CPP funds and reviewing bylaws for general compliance with the CPP's contractual guidelines. *See id.* at 18; Chavez Aff. ¶ 2; Thompson Aff. ¶ 2. The City did not draft or propose any amendments to Alliance's bylaws, nor does it require neighborhood organizations like Alliance to include specific provisions in bylaws. Chavez Aff. ¶ 3; Thompson Aff. ¶ 3; Rubedor Aff. ¶ 9. If bylaws do not comply with guidelines, the City's only recourse is to recommend that the neighborhood organization bylaws be revised to comply with the CPP contractual guidelines or to withdraw contract funding. Rubedor Aff. ¶ 11. Additionally, neighborhood organizations are not required by the City or the CPP to maintain business directories. Rubedor Aff. ¶ 7.

The City is only one of many partners with which Alliance works to benefit the Whittier neighborhood. Alliance also collaborates and partners with numerous local organizations, including the American Relief Agency for the Horn of Africa, Big

Brothers Big Sisters of the Twin Cities and other organizations serving youth, Somali Independence Day Tabling, Midtown Greenway, Minneapolis Institute of Arts, Whittier faith-based organizations, the League of Women Voters, and Xcel Energy. *See* Christ Aff. Ex. 3 at 28. Conversely, Alliance is only one of many private and public agencies with which the City partners to implement the Whittier neighborhood plans, including the Center for Energy and Environment, Franklin National Bank, and Project for Pride in Living. Thompson Aff. ¶ 4.

The Alliance Board of Directors is and has been a diverse body. *See* Christ Aff. ¶ 20. It is undisputed that no Plaintiff applied to be a candidate for the 2015 Board of Directors election. *Id.* at ¶¶ 34-35. As a result, no Plaintiff has been found ineligible for candidacy because there was no application to be considered by the Alliance Board of Directors.

## II. ARGUMENT

### a. *Plaintiffs' Claims Must be Dismissed Because Plaintiffs Lack Standing*

As the party seeking an exercise of jurisdiction in their favor, Plaintiffs bear the burden to "clearly allege facts demonstrating that [they are] a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975). Plaintiffs have failed to do so, either in their threadbare Complaint or their cursory argument on this foundational issue. *See generally* Compl.; Opp'n Mem. at 8-10. Accordingly, this Court should find that Plaintiffs lack standing and dismiss their claims in their entirety with prejudice.

5

Plaintiffs have abandoned any arguments that they have standing to bring their MHRA claim by failing to address them in their Opposition Memorandum. *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes a waiver of that argument."); *Mark v. Ault*, 498 F.3d 775, 786 (8th Cir. 2007) (holding that a party's failure to raise or address an issue constitutes abandonment); *Montero v. Bank of Am., N.A.*, No. 13-CV-850, 2014 WL 562506, at *15 (D. Minn. Feb. 13, 2014) (finding that plaintiff's failure to address defendants' arguments regarding dismissal amounted to a concession that the claim must be dismissed). Under either Minnesota Statute Section 363A.17(3) or Section 363A.12, the same result is reached – Plaintiffs lack standing, and their MHRA claims must be dismissed. Similarly, Plaintiffs have made no argument that they have standing to bring their claim for "Equity and Irreparable Injury," so this claim must likewise be dismissed.

Plaintiffs' Opposition Memorandum argues only that they have standing to challenge the current 2015 bylaw provisions. *See* Opp'n Mem. at 9-10. Accordingly, Plaintiffs have conceded that they *lack standing* for the majority of the Complaint's factual allegations, including the following: (a) Alliance's interpretation of its bylaws; (b) Alliance's alleged failure to permit Somali businesses to register for the business directory; and (c) Alliance's denial of Plaintiffs' candidacy in the 2014 election. *See id.* at 9-10; Compl. ¶ 16. Therefore, this Reply Memorandum focuses solely on Plaintiffs' standing to challenge the 2015 election bylaw provisions.

Plaintiffs ask this Court to issue an opinion regarding a purely speculative injury rather than an actual injury as required. "While a party need not expose himself to actual

6

arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights, he *must show that his injury is more than imaginary or speculative*." *Mo. Roundtable for Life v. Carnahan*, 676 F.3d 665, 672 (8th Cir. 2012) (quotations and citations omitted) (emphasis added).  No Plaintiff applied to be a candidate for the 2015 Alliance election.  Plaintiffs are unable to demonstrate that they have *actually been injured* by the bylaws or their interpretation.  *See* Christ Aff. ¶¶ 34-35; *see also* Sabri Aff. ¶ 11; Webb Aff. ¶ 8; Schulenberg Aff. ¶ 8; Metoyer Supp. Aff. ¶ 8; Cali Aff. ¶ 20.  Plaintiffs ask this Court to speculate that their candidacy applications would have been rejected because they failed to submit a 2015 candidacy application and failed to attend the Annual Meeting.  Plaintiffs therefore lack standing because they have not, in fact, been injured.

In an analogous situation, the Supreme Court found that an individual who does not seek membership lacks standing to challenge allegedly discriminatory membership criteria.  *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166-67 (1972).  In *Irvis*, the plaintiff sought to challenge membership criteria which facially discriminated on racial grounds, barring all non-whites from membership.  *Id.*  The *Irvis* Court nonetheless determined the plaintiff lacked standing because he "was not injured by [defendant's] membership policy, since he never sought to become a member." *Id.* at 167.  Similarly,

7

Plaintiffs lack the standing to challenge Alliance's bylaws because the 2014 bylaws no longer exist in the same form, and they failed to seek candidacy under the 2015 bylaws.[4]

Plaintiffs cite only two cases as their sole basis for standing. Neither, however, is germane to the matter before this Court. Plaintiffs quote heavily from *281 Care Comm'n v. Arneson*, 638 F.d3 621 (8th Cir. 2011), a case involving the facial challenge of a Minnesota statute criminalizing "knowingly false speech" about ballot initiatives. *Id.* at 626. *Arneson* involved straightforward free-speech infringement – a community organization allegedly self-censored its criticism of the ballot initiative based on a "reasonable fear of prosecution." *Id.* at 629. Furthermore, the *Arneson* plaintiffs *had in fact* exercised such speech, which triggered threats of prosecution and the filing of a complaint under the Minnesota statute. *Id.* at 630.

Unlike *Arneson*, the bylaws and policies to which Plaintiffs now object carry no criminal or civil penalty, and no Plaintiff has alleged nor could reasonably have a fear of prosecution. Furthermore, Plaintiffs have not self-censored their speech—rather, Plaintiffs actually acknowledge they have repeatedly and publicly criticized the bylaws and Alliance's Board of Directors. *See, e.g.*, Metoyer Aff. ¶ 5; Sabri Aff. ¶¶ 3, 8. Moreover, Plaintiffs have not alleged that they defamed Alliance, acted maliciously toward Alliance, failed to be actively involved in Alliance, or failed to support its aims and purposes. Rather, Plaintiffs ask this Court to find standing based solely on

---

[4] Plaintiffs' Opposition Memorandum does not reference Alliance's 2014 bylaws. However, any challenge to Alliance's 2014 bylaws is moot both because there has been another election (in which they failed to participate) and because the 2014 bylaws were amended and approved on January 12, 2015. *See, e.g., Hechenberger v. W. Elec. Co., Inc.*, 742 F.2d 453, 455 (8th Cir. 1984) (finding plaintiffs' claims moot because the allegedly discriminatory statute had been changed).

speculation that they would have been found ineligible under the 2015 Alliance bylaws. Such conjecture is not legally sufficient to establish standing. *See Irvis*, 407 U.S. at 167.

Plaintiffs critically misstate the only other case upon which they rely in their standing argument, *FW/PBS, Inc. v. Dallas*, 493 U.S. 215 (1990). Plaintiffs allege that the Supreme Court found the plaintiffs *had* standing to challenge licensing requirements they had never tested. Opp'n Mem. at 10-11. The Supreme Court *actually* held that the plaintiffs *did not have standing* to challenge the licensing requirements, stating "Examination of the record here reveals that *no party has standing* . . . ." *Dallas*, 493 U.S. at 233 (emphasis added). The Supreme Court considered standing *sua sponte*, finding that standing "is perhaps the most important of [the jurisdictional] doctrines." *Id.* at 231 (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). The Court found a lack of standing both because the plaintiffs failed to establish that they met the disqualifying criteria *and* because the plaintiffs had not applied for a license or had one revoked. *Dallas*, 493 U.S. at 233-35. Here, Plaintiffs are correct that *Dallas* is dispositive of the issues before the Court. However, the decision's holding supports a finding that Plaintiffs lack standing. As in *Dallas*, Plaintiffs failed to establish they were ineligible for candidacy to the Alliance Board and because Plaintiffs admit that they did not actually apply for a candidacy in 2015 under the 2015 bylaws. Plaintiffs lack standing, and this Court must therefore dismiss their Complaint because it lacks subject-matter jurisdiction.

### b. *Plaintiffs' Federal Claims Must be Dismissed for Lack of Subject-Matter Jurisdiction Because Alliance is Not a State Actor*

Alliance is not a state actor. The only case Plaintiffs cite in support of their expansive interpretation of "state action" is *Rendell-Baker v. Kohn*, 497 U.S. 830 (1982), a case in which the Supreme Court found *no state action*. *Id.* at 843. Once again, this case actually demonstrates that Alliance is not a state actor. Plaintiffs highlight that the defendant in that case "imposed few conditions on the [defendant's] personnel policies" and that the "State regulated the [defendant] in many ways." *Id.* at 836; *see* Opp'n Mem. at 10. The defendant school in *Kohn* was also required by various Massachusetts state funding grants to maintain certain student-teacher ratios, adhere to established record-keeping standards, create and apply written job descriptions and written standards and procedures, carry out individualized plans for each student, and have an equal employment opportunity policy statement. *Id.* at 833-34. Moreover, a state committee in *Kohn* actually required that it approve the school's initial hiring decisions to ensure the defendant school hired employees meeting the minimum qualifications established by the grant. *Id.* Notwithstanding all these requirements imposed by state organizations and tied to the school's use of state funding, the *Kohn* Court held that the defendant school was *not* a state actor and therefore the First and Fourteenth Amendments did not apply to defendant's personnel decisions. *Id.*

The minimal involvement of the City in Alliance's operations is far less than that of Massachusetts in *Kohn*, where the Supreme Court found no state action involved. Here, the City imposes *no conditions* on Alliance's personnel policies, nor are they

involved in drafting bylaws or articles of incorporation. Chavez Aff. ¶ 3; Thompson Aff. ¶ 3; Rubedor Aff. ¶ 9. The City does not regulate Alliance at all. Instead, as a nonprofit corporation, Alliance must abide by the regulations governing all 501(c)(3) organizations and Minnesota's non-profit corporation statute, Minnesota Statute Section 317A.181. The City has no say in Alliance's recordkeeping, staffing ratios, job descriptions, or its standards and procedures. In addition, Alliance is not extensively regulated by the City, its decisions are not compelled or even influenced by any guidance by the City, and it does not serve a public function which has "traditionally been the exclusive prerogative of the State."[5] *Kohn*, 457 U.S. at 842 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974)). The facts alleged by Plaintiffs here are far less than those in either *Kohn*, 497 U.S. at 842-43, or *Blum v. Yaretsky*, 457 U.S. 991 (1982), both cases in which the Supreme Court found the plaintiffs lacked standing. Based on the undisputed, minimal involvement by the City, Alliance is not a state actor and therefore Plaintiffs' constitutional claims must fail.

The necessity of finding that Alliance is not a state actor is further demonstrated by the policy concerns expressed in *Kohn*. There, the court warned of "opening the floodgates" to constitutional claims against private parties, finding:

> The [defendant], like [] nursing homes, is not fundamentally different from many private corporations whose business depends primarily on contracts to build roads, bridges, dams, ships, or submarines for the government. Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.

---

[5] *See* Def. Mem. at 12-21 for a more thorough analysis of why Alliance is not a state actor.

*Kohn*, 457 U.S. at 840-41.  This underlying concern is applicable here.  Were Alliance found to be a state actor in this litigation, no reasoned distinction would preclude constitutional claims against any private entity that contracts with the City, be they the neighborhood organizations involved with Minneapolis's 84 neighborhoods or the other agencies which the City assigns to implement the Whittier neighborhood plans, such as Project for Pride in Living, Franklin National Bank, and Center for Energy and Environment.  *See* Thompson Aff. ¶ 4.

Alliance is not a state actor, and Plaintiffs' claims must be dismissed with prejudice.

          **c.  *Plaintiffs' Claims Must Be Dismissed Pursuant to Rule 12(b)(6)***

Plaintiffs' Complaint fails to state a claim, and Plaintiffs have failed to oppose Alliance's Rule 12(b)(6) motion.  Therefore, Plaintiffs have waived opposition to this rationale of dismissal and therefore have conceded that their claims warrant dismissal on Rule 12(b)(6) grounds.  *See, Satcher*, 558 F.3d at 735; *Mark*, 498 F.3d at 786. Plaintiff's First Amendment claim is insufficiently pleaded.  Plaintiffs plead no facts sufficient to establish that Alliance deprived them of their rights to freedom of speech or expression.

Additionally, facial challenges—such as Plaintiff's challenge to Alliance bylaws—are viewed with disfavor by courts, and here Plaintiffs' challenge must be dismissed.  *See Phelps-Roper v. City of Manchester*, 697 F.3d 678, 685 (8th Cir. 2012) (quoting *Wash. State Garage v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)).

Plaintiffs' Equal Protection claim similarly does not pass Rule 12(b)(6) muster because the Complaint identifies no specific restrictions which would limit Alliance members' right to vote or facts sufficient to demonstrate an improper purpose, as required. *See Clayton v. Kiffmeyer*, 688 N.W.2d 117, 129 (Minn. 2004). Plaintiffs' claims only regard their access to the ballot, which is treated quite differently than the right to vote. "Unlike the right to vote [in a political election], the right to run for office is not a fundamental right." *Stiles v. Blunt*, 912 F.2d 260, 266 n.10 (8th Cir. 1990). "Far from recognizing candidacy as a 'fundamental right,' [the Supreme Court has] held that the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'" *Clements v. Fashing*, 457 U.S. 957, 963 (1982) (quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972)); *see also Richards v. Dayton*, Civ. No. 13-3029, 2015 U.S. Dist. LEXIS 40478, at *81 (D. Minn. Jan. 30, 2015) (same).

Finally, Plaintiffs' MHRA and "Equity" claims are unsupported by fact or law and must be dismissed. *See Greiner v. City of Champlin*, 27 F.3d 1346, 1355 (8th Cir. 1994); *Christensen v. PennyMac Loan Services, LLC*, 988 F. Supp.2d 1036, 1045 (D. Minn. 2013). For all these reasons and those set forth more fully in Alliance's initial Memorandum, Plaintiff's Complaint fails the *Iqbal/Twombly* pleading standard and must be dismissed.

### III.   CONCLUSION

For all these reasons, Alliance respectfully requests that the Court dismiss this action in its entirety with prejudice and deny Plaintiffs' Motion for Preliminary

Injunction. In addition, Alliance respectfully requests that this Court award its reasonable attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 1988.

Dated: May 6, 2015

Respectfully submitted,

**GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.**

 /s/ Matthew P. Webster
Matthew P. Webster (#0392530)
Samuel W. Diehl (#0388371)
500 IDS Center
80 S. Eighth Street
Minneapolis, MN 55402
Telephone: (612) 632-3381
Facsimile: (612) 632-4381
matthew.webster@gpmlaw.com
samuel.diehl@gpmlaw.com

**ATTORNEYS FOR DEFENDANT WHITTIER ALLIANCE**

GP:3989305 v6