UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

Basim Sabri, Marty Schulenberg,                 Court File No. 15-cv-01578 (ADM/SER)
Mohamed Cali, Jay Webb, and
Zachary Metoyer,

                        Plaintiffs,              **DEFENDANT CITY OF
                                                 MINNEAPOLIS'S REPLY
                                                 MEMORANDUM IN SUPPORT OF
vs.                                              MOTION TO DISMISS**

Whittier Alliance, a Minnesota not-for-
profit corporation, and City of Minneapolis,
a municipal corporation,

                        Defendants.

_____

        Despite filing six new affidavits with hundreds of pages of documents, Plaintiffs'

Memorandum in Opposition to Defendants' Motion to Dismiss ("Opposition") fails to

assert any facts that would transform the alleged acts of Whittier Alliance, a private non-

profit corporation, into that of a state actor. Consequently, this Federal Court does not

have jurisdiction over the Plaintiffs' Complaint or Motion for Preliminary Injunction.

Additionally, having sustained no actual injuries, Plaintiffs continue to lack standing to

assert a claim before this Court. Therefore, this Court should grant the City of

Minneapolis's ("City") Motion to Dismiss and deny the Plaintiffs' Motion for

Preliminary Injunction.[1]

_____

[1] To the extent applicable, the City hereby adopts all of the arguments and submissions of
the Defendant Whittier Alliance.

**A.  Plaintiffs' Claims Must Be Dismissed For Lack Of Subject-Matter Jurisdiction Because Whittier Alliance Is Not A State Actor**

The Plaintiffs' Opposition appears to abandon the four tests for identifying state action that originally appeared in the Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction.  Plaintiffs' Opposition does not reference, let alone offer support for the so-called "symbiotic relationship test," "command and encouragement test," "joint participation" doctrine, and "public function" test.[2]  Nor does the Opposition challenge the analysis offered by the City or Defendant Whittier Alliance, which contest a finding of state action under all of the asserted tests.

Rather, Plaintiffs contend that *Adickes v. S.H. Kress Co.*, 398 U.S. 144 (1970), a case cited by the Supreme Court in *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982), warrants a finding of state action here.   This assertion is unfounded.  The facts of this case depart from those in *Adickes* and are more similar to those in *Rendell-Baker*, where no state action was found.

---

[2] Although Plaintiffs offer the cursory statement that Whittier Alliance is a co-partner of the City in a number of governmental functions, the Plaintiffs do not cite to any case law that would make such a claim legally relevant.  (Opposition (ECF Doc. No. 26) at p. 1). The City does not dispute that, as part of the Community Participation Program, it may enter into contracts for the purpose of offering housing-related programs, public safety initiatives, and community activities for the Whittier neighborhood.  However, Plaintiffs fail to cite any legal precedent that these activities fall within the gambit of public functions that are "traditionally the *exclusive* prerogative of the State."  *Rendell-Baker v. Kohn*, 457 U.S. 830 (1982) (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974)); *see also United Auto Workers, Local No. 5285 v. Gaston Festivals, Inc.*, 43 F.3d 902, 907 (4th Cir. 1995) (listing functions that the U.S. Supreme Court has identified as those traditionally and exclusively to be the prerogative of the state).

The Plaintiffs cite to *Adickes* for the proposition that a "state normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state." (Opposition at p. 11 (quoting *Adickes*, 398 U.S. 144 (1970)). The *Rendell-Baker* Court explained that, in *Adickes*, a restaurant refused to serve a white teacher who was in the "company of six Negro students" and a town sheriff then arrested the teacher for vagrancy because she requested to be served lunch while in the students' company. *Rendell-Baker*, 457 U.S. at 838, n.6. Consequently, the Court concluded that the "restaurant acted under color of state law because it conspired with the sheriff, a state actor, in depriving the white teacher of federal rights." *Id.*

In contrast to *Adickes*, the Plaintiffs do not allege any conspiracy involving the City and Whittier Alliance, certainly not with sufficient clarity or particularity to withstand the City's Rule 12 motion. The Plaintiffs do not allege that the City held or exercised any coercive power over Whittier Alliance that resulted in the contested actions by Whittier Alliance. Likewise, the Plaintiffs do not allege that the City provided significant encouragement to Whittier Alliance for the purpose of prompting or accomplishing Whittier Alliance's contested decisions.

Additionally, the decision in *Rendell-Baker* illustrates that no state action exists in this case. In *Rendell-Baker*, the Supreme Court held that the discharge of a counselor and teachers at a privately operated school was not deemed to be state action despite the fact that nearly all of the school's students were referred to the school by city or state agencies, the city paid for the students' education, public funds accounted for 90% of the

school's operating budget, and the school was required to comply with a variety of state regulations to be eligible for funding. *Id.* at 832-33. Although the Court noted that the state regulations imposed "few specific [personnel] requirements," the regulations nevertheless required the school to "maintain written job descriptions and written statements describing personnel standards and procedures" and the school was contractually required to comply with equal employment opportunity requirements. *Id.* at 833. Additionally, as a precondition to receiving federal grant money administered through a state committee, the state committee was required to approve the hire of any new school counselors. *Id.* Noting that the school's relationship with the state was "not different from that of many contractors performing services for the government" and that even the existence of "extensive and detailed" regulations does not necessitate a finding of state action, the Court dismissed the petitioners' claim for relief. *Id.* at 841, 842 (citing to *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1974) ("The [*Blum v. Yertsky*] Court relied on *Jackson*, where we held that state regulation even if 'extensive and detailed,' 419 U.S., at 350, 95 S.Ct., at 453, did not make a utility's actions state action.")

The City's connection with Whittier Alliance cannot be said to be more involved than the connections identified in *Rendell-Baker*. Indeed, the City's regulations are not sufficiently linked to Whittier Alliance's contested actions to permit them to be viewed as state action. The only specific City involvement alleged by Plaintiffs relates to Whittier Alliance's bylaws and election for Board of Directors. *See e.g.*, (Opposition at p. 11 (Plaintiffs asserting that the City denied Plaintiffs' grievance with respect to the

Participation Requirement used in the 2014 election and the City reviewed the Anti-Defamation Provision enacted into bylaws before the 2015 election)).

The City's involvement here is akin to the "few specific requirements" found in *Rendell-Baker*. The Community Participation Program ("CPP") guidelines only require neighborhood organizations to have bylaws – no specific bylaws are required. (Rubedor Aff. at ¶9). Similarly, CPP guidelines only require a neighborhood organization to elect board of directors on an annual basis and that neighborhood residents comprise a majority of the board – no other requirements are imposed. *See* (Opposition at p. 3 (citing Section II (6)). Surely these minimal requirements are analogous to the few personnel requirements imposed by the state in *Rendell-Baker*.

Indeed, the only City connection to Whittier Alliance's bylaws and elections – other than that they must exist – is that they cannot violate CPP guidelines. Plaintiffs attempt to amplify the City's involvement, claiming that it "rubber stamped" Whittier Alliance's decision to impose a Participation Requirement and that a City representative supervised Whittier Alliance's process of rewriting its bylaws. Rhetorical flourish aside, however, Plaintiffs do not dispute that the City's involvement – in assessing the Plaintiffs' grievance or reviewing Whittier Alliance's updated bylaws – was limited to determining whether Whittier Alliance's actions and bylaws complied with CPP guidelines and that the City never proposed or drafted any of Whittier Alliance's bylaws. Given this limited scope of review, the City's involvement falls within the type of "regulation," which, standing alone, does not evidence state action.

Plaintiffs' attempt to more broadly intertwine the City and Whittier Alliance fails. Plaintiffs' contention that the City requires neighborhood organizations to follow democratic processes as a *sine qua non* for being recognized as a neighborhood organization is simply an ornate way of saying that Whittier Alliance must comply with CPP guidelines.   The Plaintiffs do not allege that any of the CPP guidelines foster discrimination, exclusion or the violation of any rights, let alone their rights.   Thus, as noted above, ensuring compliance with CPP guidelines falls loosely within the type of "regulation" that does not evidence state action. [3]

## B.    Plaintiffs' Claims Must Be Dismissed Because Plaintiffs Lack Standing

Plaintiffs lack standing to assert their claims in Federal Court.   Plaintiffs contend that they have standing in this lawsuit, citing to *281 Care Comm'n v. Arneson*, 638 F.d3 621 (8th Cir. 2011) and *FW/PBS, Inc. v. Dallas*, 493 U.S. 215 (1990).   These cases fail to support standing for the Plaintiffs.

In *281 Care Comm'n*, the Eighth Circuit held that grass roots advocacy organizations and their leaders, who opposed various school-funding ballot initiatives, had standing to challenge a criminal provision of the Minnesota Fair Campaign Practices Act ("MFCPA") on First Amendment grounds.   638 F.3d 621 (2011).   The contested MFCPA provision stated that a person who intentionally participated in the "preparation,

---

[3] The mere fact that Whittier Alliance serves as neighborhood organization is insufficient to render it a state actor.  *See Rickmyer v. Browne*, 995 F. Supp. 2d 989, 1020 (D. Minn. 2014) (dismissing all federal claims against a non-profit neighborhood organization operating under the City's guidelines because the organization was not a state actor acting under color of state law).

dissemination, or broadcast of paid political advertising or campaign material … with respect to the effect of a ballot question, that is designed or tends to … promote or defeat a ballot question, that is false, and the person knows is false or communicates to others with reckless disregard of whether it is false" is guilty of a gross misdemeanor.  638 F.3d at 625.   In determining whether the plaintiffs had standing to challenge the provision, the Court noted that the "relevant inquiry is whether a party's decision to chill his speech in light of the challenged statute was 'objectively reasonable.'"  *Id.* at 627.

The "objectively reasonable" inquiry does not support standing for Plaintiffs.  The plaintiffs in *281 Care Comm'n* asserted that they had, in fact, censored themselves for fear of being criminally prosecuted, in part, because administrative proceedings – a precursor to criminal prosecution – had previously been instituted against one of the plaintiffs and another plaintiff interpreted the reported statements of a superintendent to be a warning that he would be sued if he continued to utilize certain tactics in opposing ballot initiatives.  *Id.* at 626.   Upon these facts, the Eighth Circuit concluded that the plaintiffs had standing.

These facts are distinguishable from the facts presented by Plaintiffs.  The Plaintiffs did not face any actual or perceived threat of criminal prosecution.  The Plaintiffs do not allege that they actually censored their speech in any manner as a result of the amended bylaws. In fact, Plaintiffs continued to be critical of the Board of Directors and the contested bylaws.   *See, e.g.*, (Metoyer Aff. ¶ 5; Sabri Aff. ¶¶ 3, 8). Although the Plaintiffs allege that they perceived the amended bylaws to be aimed at them, they have not presented any facts to objectively support such a claim or render it

credible.   After all, at least two of the Plaintiffs were candidates in previous Board of Directors elections.   (Cali Aff. at ¶16 (Plaintiff Cali ran as a candidate in the 2010 election, but was not elected); Christ Aff. at ¶21 (Plaintiff Metoyer was approved to be a candidate in the 2014 election, but withdrew from consideration)).   Additionally, Plaintiffs did not submit applications to be candidates for the 2015 election and, accordingly, cannot claim to have been excluded from the election.   Plaintiffs do not identify any person who was excluded from running as a candidate in the 2015 election because of the contested bylaws.   These facts preclude standing.

Plaintiffs' citation to *FW/PBS, Inc. v. Dallas*, 493 U.S. 215 (1990) is likewise unavailing.   In *FW/PBS, Inc.*, petitioners raised a variety of First Amendment challenges to a city's licensing scheme that sought to temporally limit a person's ability to obtain a license to operate various adult entertainment businesses if the petitioner or their spouse had been convicted or certain crimes.   *Id*. at 231-32.   The Court *sua sponte* raised the issue of standing.   *Id*. at 230-31.   Notwithstanding the fact that the city represented that one or two of the petitioners' licenses had been revoked, the Court concluded that the petitioners lacked standing to challenge the licensing scheme, including First Amendment challenges.   *Id*. at 230, 235, 236 n. 3.   The Court noted that the record below failed to identify the petitioners whose licenses had been revoked.   *Id*. at 235.   Accordingly, the Court concluded that "no petitioner has shown standing to challenge" the provisions of the licensing scheme that resulted in the revocations.   *Id*.   Thus, absent proof that a named petitioner had a license that was actually revoked, no standing could be found. Given that Plaintiffs did not submit applications to be candidates in the 2015 Board of

Directors election and, consequently, cannot establish that were rejected as candidates, *FW/PBS, Inc.* instructs that Plaintiffs lack standing before this Court.

**C.    Plaintiffs' Limited Grievance Did Not Raise Any Complaints About the Exclusion of Somali Businesses from Whittier Alliance's Business Directory Or Whittier Alliance's Revised Bylaws**

Plaintiffs ask this Court to adjudicate the alleged exclusion of certain businesses from Whittier Alliance's business directory[4] and the permissibility of the Anti-Defamation Provision in Whittier Alliance's bylaws.   These issues have never been raised through the CPP grievance process.   Plaintiffs merely submitted a limited grievance objecting to Whittier Alliance's use of a Participation Requirement as a prerequisite to candidacy for the Board of Directors.[5]

---

[4] Plaintiffs' Opposition dedicates significant attention to their assertion that Whittier Alliance refused to include certain Somali businesses in the Whittier Alliance business directory.  This allegation is wholly unrelated to the City.  Indeed, the City's CPP does not require a neighborhood organization to maintain a business directory. (Rubedor Aff. at ¶7).  Additionally, the Plaintiffs do not allege that the City has been involved in any decisions or complaints relating to the Whittier Alliance business directory.

[5] With respect to the Participation Requirement, Plaintiffs allege that they were intentionally rejected from running for the 2014 Board of Directors election even though they had previously participated in activities within the Whittier neighborhood.  To be clear, however, with the exception of Plaintiff Metoyer who was permitted to be a candidate, the record reflects that the Plaintiffs' applications for candidacy were rejected because they failed to provide *proof* of such participation with their applications and *did not certify* that they had "participated on Whittier committees or volunteered for neighborhood activities on a regular basis."  *See* (ECF Doc. No. 31 at p. 27; ECF Doc. No. 23-1 at pp. 4-5).   Although Plaintiffs now submit affidavits identifying their neighborhood activities, they do not assert that they submitted proof of participation or the required certification with their candidate registration form.  Plaintiffs also fail to identify any legal authority that would render the Participation Requirement unlawful. *See* Minn. Stat. §317A.181, subd. 1 ("Bylaws may contain any provision relating to the management or regulation of the affairs of the corporation consistent with law or the articles, including but not limited to . . . the qualifications . . . of directors").

Plaintiffs claim that they have no obligation to pursue a grievance on the issues now presented to this Court.  The Plaintiffs rely on *Fantasysrus v. City of East Grand Forks*, 881 F.Supp.2d 1024 (D. Minn. 2012).  In that case, however, the Court focused on the *Younger* abstention doctrine, which generally precludes a federal court from interfering with pending state criminal prosecutions and civil cases, and only passing reference was made to a plaintiff's obligation to exhaust administrative remedies.  *Id*. at 1028-30.  Plaintiffs have not cited any case law stating that they are not obligated to exhaust, or at least initially pursue, administrative remedies before seeking federal judicial relief.

Even if the Court determines that the Plaintiffs are permitted to seek judicial review without exhausting administrative remedies, the absence of a grievance with respect to the business directory and amended bylaws undermines Plaintiffs' arguments that the City "rubber stamps" Whittier Alliance's decisions and that the City is closely involved in Whittier Alliance's operations and elections.  Indeed, the absence of a grievance on these issues confirms that the Plaintiffs' complaints represent a wholly private dispute between Plaintiffs and Whittier Alliance.

## CONCLUSION

For the reasons stated above, the City of Minneapolis respectfully requests that the Court dismiss the Plaintiffs' Complaint with prejudice and deny Plaintiffs' Motion for Preliminary Injunction.

---

Dated: <u>May 6, 2014</u>                    SUSAN L. SEGAL
                                             City Attorney
                                             By
                                             */s/ Kristin R. Sarff*
                                             KRISTIN R. SARFF (#0388003)
                                             Assistant City Attorney
                                             Minneapolis City Attorney's Office
                                             350 S. 5th Street, Room 210
                                             Minneapolis, MN 55415
                                             (612) 673-3919

                                             *Attorneys for Defendant City of Minneapolis*